## In re LOWMAN'S ESTATE.

### (Surrogate's Court, Chemung County, Filed July, 1892.)

1. WILL—UNDUE INFLUENCE—DRUGS.

In a proceeding to set aside a decree, admitting a will to probate, on the ground of undue influence, contestant insisted that from the fact of the administration of morphine to decedent by his nephew, a physician, to alleviate the pain of inflammatory rheumatism, decedent's mind had become so impaired that it could be more easily controlled, and that the nephew had administered the drug for the purpose of unduly influencing decedent in the making of his will, *held*, that as it appeared that decedent was a man of robust frame, strong constitution, temperate in habit and of splendid business attainments, and of perfectly sound mind, and that he had not taken any great portion of morphine up to the time of the execution of the will, and such as he had taken was properly administered for the sole purpose of alleviating extreme pain, no such inference could be drawn from the evidence as alleged by contestant.

2. SAME—EVIDENCE—BURDEN OF PROOF.

It was further insisted by contestants that for a long time prior to the execution of the will, testator's nephew, the physician, had charge of the business affairs of decedent, who deferred to his nephew's opinion and judgment in the management of some of his affairs, and that there was therefore an opportunity for the nephew to unduly influence decedent in the making of his will. *Held*, that undue influence is a

fact which must be proven; it cannot be guessed at. The burden of proving that fact was upon the contestants, and unless they established to the satisfaction of the court not only that the opportunity existed, but that it was followed by coercion or fraud, they could not sustain their position. That as there was no evidence that the nephew or any other person than decedent's legal adviser talked with decedent about the making of any will, or the disposition of his property, either prior to or at the execution of his will; that the witnesses to the will positively testified that decedent did not appear to be under the influence of any person, that the disposition of decedent's property was dictated by the excellent judgment which had characterized all the acts of his life, and that there was no evidence that decedent was unduly influenced by any one between the time of the execution of his will and of his death, the will in all respects conformed to the requirements of law.

**3. SAME—COSTS.**

When the evidence shows that a proceeding to revoke probate of a will was not brought in good faith, the contestants should be subjected to costs.

Application to set aside decree admitting will to probate.

Robertson, Smith & Bull, for contestants; Baldwin & Baldwin, for proponents.

TAYLOR, S.—On the 9th day of April, 1891, Jacob Lowman, a descendant of one of the oldest families of this county, and a resident of it all his life, at the age of 71 years, died at his home in the town of Chemung. Previous to his death, and on the 20th day of June, 1889, he had made and executed a last will and testament which was presented to the surrogate of this county for probate, and admitted to probate on the 19th day of November, 1891. On the 11th day of March, 1892, Lyman Lowman, a nephew of said deceased, and Phebe Goodwin, a niece, filed a petition in this court for the revocation of the decree admitting said will to probate, alleging that, at the time of its execution, the deceased was not competent to make a will, and that the same was procured by fraud, imposition, coercion and undue influence practiced and exercised upon the said

Jacob Lowman by certain legatees and devisees named in said instrument, and by persons at their instance, and under and by their direction and connivance; and that said deceased was under the restraint and duress of the said legatees and devisees. A citation was issued upon such petition, returnable May 2, 1892, and issue was joined upon the allegations therein contained, and a large volume of evidence taken in reference thereto. I have carefully read over the large mass of testimony taken in this case, a very considerable portion of which, bearing upon the testamentary capacity of the deceased, is of no value in view of the admission of the contestants' counsel that he had such capacity, except as it might bear upon the question of undue influence. Jacob Lowman was a man of robust frame, strong constitution, temperate in habit, economical in expenditure, a shrewd and calculating man, and of splendid business attainments. For years he had been prominent and well known in the business circles of this county, extensively engaged in lumbering, milling, farming, and the production of butter, until, at the time of his death, he was reputed to be, and probably was, one of the largest owners of real estate in the county; a man of wealth and influence. All of his life, up until within two weeks of his death, he gave personal supervision and attention to the management and control of his vast business interests. It is no extravagance of language to assert that down to the hour of his death any person who would have insinuated that Jacob Lowman was of unsound mind or incapable to conduct and manage his affairs, would have been regarded as either indulging in wit or sarcasm. He had never married, and at the time of his death he left no nearer relatives than nephews and nieces. It is not contended upon the part of the contestants but what the will admitted to probate, and which this proceeding is brought to revoke, was drawn and executed in conformity with the statutes. It appears from the evidence that some time previous to its execution the deceased sent for his lawyer, Mr. John A. Reynolds, who went to his home in the town of Che-

mung, and there, for nearly half a day, the deceased and his attorney consulted and advised over the disposition of his property. Voluminous memoranda were taken by the attorney, and following the instructions there received, he subsequently drew the will in question, leaving, however, the question of who should be executors, and one or two minor details, to be considered and settled when it should be submitted to the deceased for his signature. On the 20th of June, 1889, Mr. Reynolds, in company with Mr. Stanchfield, his law partner, went to the home of the deceased with the will, which he had drawn pursuant to the instructions he had theretofore received from the deceased. It was read over to the deceased; the executors were selected; witnesses were called in and requested to and did sign it, and it was left with Mr. Reynolds for safe-keeping. There is no pretense upon the part of these contestants that any informality sufficient to be worthy of criticism accompanied the execution of this will, but they insist that this instrument does not represent the free and voluntary act of the decedent, but is impregnated with the influences which had heretofore surrounded him and been exercised over him by some of the legatees or devisees under this instrument. The only question, therefore, that it is necessary to discuss is whether there is evidence sufficient in this case to uphold the contention of the contestants that the decree admitting this will to probate should be revoked.

The law is well settled that, in order to avoid a will upon the ground of undue influence, the influence must be such as to overpower and subject the will of the testator, thus producing a disposition of the property the testator would not have made if left freely to act his own pleasure; and this must be proved like any other fact; it must not be guessed at. The influence or importunity must be such as to deprive the testator at the time of the free exercise of his will, whereby the instrument becomes the will of another man, rather than that of the testator. Such undue influence must have been exercised in respect to the very act, and the act must be proved, and will not be in-

ferred from opportunity and interest. Gardiner v. Gardiner, 34 N. Y. 155; Seguine v. Seguine, 4 Abb. Dec. 191; Kinne v. Johnson, 60 Barb. 69; Cudney v. Cudney, 68 N. Y. 148; Deas v. Wandell, 3 Thomp. & C. 128. The influence exerted must appear to have amounted to moral coercion, which restrained independent action, destroyed free agency, or have been such an importunity as the testator was unable to resist, and which constrained him to do that which was against his free will. Society v. Loveridge, 70 N. Y. 387; Merrill v. Rolston, 5 Redf. Sur. 220.

Keeping in view the principles laid down by the courts for the determination of questions of fact arising in contests of this character as above cited, a brief resume of the evidence of the contestants bearing upon this question is necessary for its determination. The deceased, about six months before the time of the execution of this will, had been attacked with inflammatory rheumatism, which the evidence discloses was principally confined to his lower limbs; and which, to a greater or less extent, deprived him of that activity of body which he had heretofore uniformly possessed. At times the disease was so violent that it confined him to his house, and subjected him to severe physical pain and suffering. The physicians who attended him previous and subsequent to the execution of this will were all produced and sworn in this proceeding. They uniformly testify that they saw no evidences of mental unsoundness; that, so far as their observation and knowledge extends, with the exception of this physical incapacity, he was in the full possession of the same strength of character and mental attainments that they had heretofore noticed and observed in him. It appears from their evidence, and from the evidence of some of the attendants who took care of the deceased while suffering from this malady, that for the purpose of alleviating the pain which he endured, medicines were administered to him, consisting sometimes of morphine; and that this medicine was prescribed and furnished by Dr. Everett, who is a physician, a nephew of the decedent, and one of the residuary legatees and executors under this will.

It does not appear, however, anywhere in this case, that at the time of the delivery to Mr. Reynolds of the memoranda from which this will was drafted, or at the time of its execution by the deceased, that he was in any way under the influence of any narcotic; but, on the contrary, was in full possession of all of his mental faculties; as clear, concise, and explicit in his conversation and deportment as he had been at any time of his life. The contestants insist that from this fact of the administering of this drug the mind of the deceased had become impaired to such an extent that it could be influenced and controlled more readily, more easily, and more surely than though it had not been prescribed; and they ask us to infer that it was administered under the directions of Dr. Everett for the purpose of bringing about this condition of mind in the decedent which would enable him more readily to influence him in the disposition of his property and the making of his will. We do not think any such inference could be drawn from the evidence, if such an inference were justifiable under the law; for it is perfectly clear to our mind, after reading and considering this evidence, that the deceased had not taken any very great portion of morphine up to the time of the execution of this will; and such as he had taken was properly administered for the sole purpose of alleviating and allaying the extreme pain which he suffered from the malady above referred to. And while it is not material to a decision of this case, we think justice to the parties requires us to say that this theory advanced by the contestants is wholly without foundation, and that no person connected with or attending the decedent during all of the time of that painful illness which eventually ended his life, administered to him any medicines except in the utmost good faith, and founded upon the belief that they were the proper remedies to administer in connection with his complaint.

It is insisted, however, by the contestants, that for a time previous to the execution of this will—what length of time, how-

ever, is not clearly developed—Dr. Everett had charge of some of the business affairs of the deceased. That the deceased consulted him, and deferred to his opinion and judgment in the management of some of his affairs, is very clear. As has been stated, the decedent's business was not only extensive, but diversified. Dr. Everett was apparently one in whose judgment the deceased had some degree of confidence. He was engaged in the drug business in the city of Elmira, running and operating a store; and the deceased frequently visited him, and frequently consulted him, and often left to his management and decision some of his matters of business; and from these facts the contestants' counsel contend that there was an opportunity for Dr. Everett to exercise upon the mind of the deceased undue influence in the making of this will. But, as we have seen, undue influence is a fact which must be proven; it cannot be guessed at. The burden of proving that fact is upon the contestants, and unless they have established to the satisfaction of this court not only that the opportunity existed, but that it was followed with coercion or fraud, they cannot sustain their position. It is important, as bearing upon this question, to again recur to the time of the execution of this will. Not a scintilla of evidence has been produced that previous to its execution did Dr. Everett or any other person except the deceased's legal adviser ever even talk with him about the making of any will or the disposition of his property. At the time of the giving of the instructions to his legal adviser, none of the beneficiaries under this instrument, whom it is sought to charge with improper or undue influence, were present. At the time it was signed and executed, no one participated in that transaction except the decedent's legal adviser and the persons who were requested to sign it as witnesses; and the persons present at its execution, and who signed it at the request of the deceased as witnesses, have, in the most positive and emphatic terms, testified that the deceased appeared to be, and they believed he was, not under any restraint or influence whatever from any person.

How, then, it can be seriously contended that, in the entire absence of any proof, the deceased up to the time of the execution of this solemn instrument had been even approached upon the subject of the disposition of his property, that he was not a free agent and acting as his own conscience and judgment dictated to him, is almost beyond the bounds of comprehension or belief. The largest portion of the testimony offered by the contestants in this case as bearing upon the question of undue influence related to circumstances and incidents subsequent to the execution if this will, and running down to the time of the death of the testator. We have carefully read and considered it all, and fail to find from it a single fact or circumstance which would justify even the inference that the deceased was under the control or constraint of any human being at the time he executed this will. In fact we are constrained to say from this evidence that this proceeding is wholly without merit, and can only be accounted for upon the ground that the custom has become quite prevalent that, so soon as a man dies, leaving a large estate, it is the signal for legal controversy, oftentimes brought for no othes purpose and with no other object in view than to harass and annoy the beneficiaries under a will, so that a settlement might be accomplished. It is proceedings of this character which, to a large extent, have created the public opinion that the administration of justice can be trifled with, and estates frittered away, under the withering process of litigation. Our final conclusion, therefore, is that Jacob Lowman, at the time of his decease, was fully competent in all respects to make a will. That he was in the full possession of his mental faculties, and not under the restraint, influence, or coercion of any person whatever, and the disposition of his property was in accordance with his wishes and desires, and dictated by that excellent judgment which had characterized all the acts of his life; that the will in all respects conforms to the requirements of the law, and the decree heretofore made admitting it to probate

must stand, and this proceeding must fail. We have only to add that from the evidence we conclude that this proceeding was not brought in good faith, but for some ulterior purpose, and therefore the contestants should be subjected to the costs of this controversy. An order will therefore be entered dismissing these proceedings, with costs against the contestants.