In the Matter of Proving the Last Will and Testament of DAVID PRICE, Deceased, as a Will of Real and Personal Property.

LEO PRICE and Others, Appellants; SADIE PRICE, as Executrix, etc., of DAVID PRICE, Deceased, Respondent.

First Department, January 12, 1923.

Wills — probate — will properly admitted to probate over objection of fraud and undue influence.

The will of the testator was properly admitted to probate over the objection that it was procured by fraud and undue influence and the surrogate properly directed the jury to answer the questions relating to fraud and undue influence in the negative, where it appeared that the only evidence of any alleged fraud or undue influence was that the brother of the testator's widow, who had been in testator's employ for many years, falsely reported to the testator that one of the contestants had stolen goods from the testator, and where it appeared on the other hand that the testator had acquired a large property; that he had no children and that the natural object of his bounty was his wife; that his will was drawn by attorneys of his own selection without outside suggestions as to its terms and that it was executed some years prior to his death, and where it was not shown that he had any desire to leave his property other than as he did, or that he was subjected to any improper influence, whether fraudulent, threatening or coercive, so as to effect a change in the disposition the testator desired to make of his property.

APPEAL by the contestants, Leo Price and others, from a decree of the Surrogate's Court of the county of New York, entered in the office of the clerk of said Surrogate's Court on the 13th day of June, 1922, admitting to probate an instrument in writing dated the 3d day of February, 1915, as the last will and testament of David Price, deceased.

*Louis Boehm* of counsel, for the appellants.

*Rose & Paskus* [*Benjamin G. Paskus* of counsel; *Lawrence S. Coit* and *Sylvan Gotshal* with him on the brief], for the respondent.

PAGE, J.:

David Price, the testator, died April 7, 1922, leaving a last will and testament dated February 3, 1915, in which he devised and

bequeathed all of his estate to his wife, Sadie Price, and appointed her as the executrix thereof. On the same date Sadie Price executed her will in which she devised and bequeathed all of her estate to her husband, David Price, and appointed him as the executor thereof. Objections to the probate of the will of David Price were filed by Leo Price, a nephew, and Sadie Ruby and Rose Tepper, nieces of the testator. The following issues were framed for trial by a jury:

I. Did David Price, the testator, subscribe the paper offered for probate bearing date the 3d day of February, 1915, at the end thereof in the presence of each of the attesting witnesses or acknowledge to each of· them that such subscription appearing on said paper had been made by him?

II. At the time of making such subscription or acknowledgment, did the said David Price declare to each of the attesting witnesses that the paper offered for probate, bearing date the 3d day of February, 1915, was his last will and testament?

III. Were there at least two attesting witnesses, each of whom signed his name at the end of said paper bearing date the 3d day of February, 1915, at the request of said David Price?

IV. At the time of the execution of the paper offered for probate, bearing date the 3d day of February, 1915, was said David Price of sound mind and memory and competent to dispose of his estate by will?

V. Was the execution of said paper bearing date the 3d day of February, 1915, by said David Price caused or procured by undue influence of any person or persons?

VI. Was the execution of said paper, bearing date the 3d day of February, 1915, by said David Price caused or procured by the fraud of any person or persons?

At the close of the contestants' case the surrogate, in denying the proponent's motion to dismiss the objections and direct a verdict in favor of the proponent, stated that at the proper time he would direct the jury to answer the first four questions in the affirmative, thus leaving Nos. V and VI as the only questions to be determined by the jury. At the close of the entire case the surrogate reserved his decision on proponent's motion to dismiss the remaining objections and for a direction of a verdict, and the case was submitted to the jury. The jury failed to agree upon a verdict, the learned surrogate thereupon directed the jury to answer the first four questions in the affirmative and the last two in the negative, and admitted the will to probate.

There was no controverting evidence as to the factum of the will. The only evidence of any alleged fraud or undue influence

was that the brother of the testator's widow, who had been in the testator's employ for thirty years, and . for many years the general manager of his business, had falsely reported to the testator that Leo Price, who .was then employed as a :manager of the testator's Newark store, had stolen goods from the stock. This was denied, and documentary evidence tended to show that the statement, if made, must have been made subsequent to the execution of the will. Giving, however, full effect to the contestants' testimony on this subject, it was not sufficient to require the submission of· the case to the jury. The testator made no provision in his will for Leo's two sisters, who would not have been discriminated against on account of Leo's alleged misconduct.

The testator was an able, forceful business man, who, starting as a bookkeeper, had become the proprietor of a chain of stores. When he was a clerk he had married, and lived in harmonious. relations with his wife until his death. As he prospered, he had made presents of valuable property to her. They had no children. She was, therefore, the natural object of his bounty. His will was drawn by attorneys of his selection without outside suggestion as to its terms. It was executed some years prior to his death. From all these circumstances it follows that no inference of fraud or undue influence could be drawn by the jury. There was nothing to show that he had any desire to leave his property other than as he did, or that he was subjected to any improper influence, whether fraudulent, threatening or coercive, so as to effect a change in the disposition the testator desired to make of his property. (*Matter of Bogardus,* ·198 App. Div. 399, 403; *Smith* v. *Keller,* 205 N. Y. 39; 44.) The surrogate, therefore, properly directed a verdict for the proponent. (*Matter of McGill,* 229 N. Y. 405, 410; *Matter of Kennedy,* Id. 567; *Matter of Hall,* 193 App. Div. 362, 367; *Matter of Brand,* 185 id. 134, 147, 153; affd., 227 N. Y. 630; *Matter of Case,* 214 id. 199, 203.) It was in reliance on these cases that the learned surrogate directed the verdict and not upon section 457a of the Civil Practice Act (as added by Laws of 1921, chap. 372). The learned counsel for the appellants has devoted a large part of his brief to the contention that this latter section is unconstitutional. Any discussion of that question in this case would be *obiter dicta,* as, *first,* the court acted on rules well settled in probate cases prior to the passage of section 457a; *second,* a jury trial in a Surrogate's Court is a modern procedure that was not known at the time of the adoption of the Constitution, hence not within its protection. The Legislature could abolish it at any time, and could regulate the procedure with relation thereto in any manner it deemed wise.

When the question of the constitutionality of section 457a is properly raised, we will pass upon it.

The decree of the Surrogate's Court should be affirmed, with costs.

CLARKE, P. J., DOWLING, SMITH and MERRELL, JJ., concur.

Decree affirmed, with costs.