## In the Matter of the Estate of DANIEL H. JACKSON, Deceased.

Surrogate's Court, New York County, April 5, 1926.

**Wills — contested probate — costs — evidence shows proponent directed fraudulent scheme to foist spurious paper upon court as last will of decedent — allowance of costs, expenses and disbursements to proponent and other unsuccessful parties denied — allowance of costs to proponent, who in good faith propounds instrument, is discretionary with surrogate under Surrogate's Court Act, § 278 — contestants allowed costs against proponent personally.**

The proponent in a contested probate proceeding is not entitled to an allowance of costs, together with expenses for counsel fees, services of handwriting experts

and other disbursements incurred in his unsuccessful attempt to sustain decedent's will, since the evidence upon the trial and the verdict of a jury upon which the surrogate directed that the paper, purporting to be decedent's last will, be denied probate, conclusively establish contestants' claim that the proponent played a leading part in a scheme to foist a spurious paper upon the court as the last will and testament of the decedent in order to obtain a large part of the estate, and the only inference to be adduced from the jury's verdict is that the paper which proponent produced as decedent's will was a mere memorandum signed by decedent and never intended as his will.

While the allowance of costs to a proponent, who, in good faith, propounds an instrument, is discretionary with the surrogate, under section 278 of the Surrogate's Court Act, an allowance cannot be made herein where the evidence of fraud in the pretended execution of the paper offered for probate is overwhelming. Nor are other legatees, who were also unsuccessful parties, entitled to costs. Costs, however, will be allowed to contestants against the proponent personally.

CONTESTED probate proceeding involving allowance of costs.

*I. Gainsburg,* for the proponent.

*Phillips, Liebell & Fielding* [*Nathan L. Miller* of counsel], for the contestants.

*Cornelius J. Smyth,* special guardian.

*Lydecker Van Riper,* for Annie Crystal, legatee.

*Isidor Enselman,* for Jacob Hoffman and another.

FOLEY, S. This is a contested probate proceeding. The decree denying probate to the propounded paper is before me for settlement. A question has arisen as to the allowance of costs to the various parties interested. The proponent requests the surrogate to allow to him, pursuant to section 278 of the Surrogate's Court Act (as amd. by Laws of 1925, chap. 581), his costs and his expenses for counsel fees, services of handwriting experts and other purposes incurred in his unsuccessful attempt to sustain the will. The proponent asks that the amount of these expenses be paid out of the estate left by the decedent, which amounts to approximately the sum of $1,250,000. The contestants oppose the allowance of any amount in reimbursement of the proponent's expenditures. The proponent's application must be denied. (*Matter of Marshall,* 189 App. Div. 477.)

Harry H. Jackson, the proponent, filed his petition for probate of the alleged will in this court. Objections were filed, contesting the probate, by the widow and two sons of Daniel H. Jackson. These objections in substance charged that the will had never been executed by Daniel H. Jackson; that it was obtained by fraud from the decedent by Harry H. Jackson, the proponent, who is an

executor and a legatee named in the contested paper; that Henry H. Jackson and Edward H. Jackson, brothers of the decedent and each a legatee in the alleged will and the subscribing witnesses thereto, aided and abetted Harry H. Jackson in fraudulently representing, uttering and propounding the contested paper as the last will and testament of the deceased, and finally that the paper offered for probate was fraudulently altered in respect to a bequest to Harry H. Jackson in the sum of $505,000.

The issues were tried before the surrogate and a jury at the March term of this court. The three principal questions submitted to the jury were answered by them as follows:

No. 1. Did Daniel H. Jackson acknowledge to each of the two subscribing witnesses on the 26th day of October, 1925, that the signature, Daniel H. Jackson, appearing on the contested paper had been made by him? Answer. No.

No. 2. At the time of making such acknowledgment did Daniel H. Jackson on the 26th day of October, 1925, declare to each of the two subscribing witnesses that the paper offered for probate was his last will and testament? Answer. No.

No. 3. Did each of the two subscribing witnesses sign his name at the end of the paper offered for probate at the request of Daniel H. Jackson on the 26th day of October, 1925? Answer. No.

Each of these questions were answered adversely to the proponent, and upon the special verdict of the jury the surrogate has directed that the contested paper be denied probate. Ordinarily the proponent of a will, who in good faith propounds the instrument, is entitled to reimbursement for his expenditures in connection with the probate proceeding if he be unsuccessful. Their allowance, however, is primarily within the discretion of the surrogate. (Surrogate's Court Act, § 278.) Where the rejection of the will or a specific provision thereof is based upon the finding of the jury or the surrogate that the paper was procured by undue influence, fraud or forgery, or upon a determination that the paper was fraudulently altered, and the proponent is a participant in the attempt to consummate the fraudulent purpose, an allowance to him must be denied.

The evidence in this case and the verdict of the jury conclusively establish the contestants' claims that Harry H. Jackson, the proponent, was the chief actor in the scheme to foist a spurious paper upon the court as the last will of Daniel H. Jackson in order to unlawfully obtain a large part of the estate. The evidence on behalf of the proponent was that the paper was executed in a taxicab between Ninety-sixth street and Broadway and the Metropolitan Museum of Art on Fifth avenue, New York city. It was claimed that

Daniel H. Jackson, the decedent, and his brothers Harry H. Jackson, Henry H. Jackson and Edward H. Jackson had met on the morning of October 26, 1925; that they entered a taxicab; that certain figures appearing upon the paper were erased and altered by Daniel; that he thereupon executed the paper as required by law, and that his two brothers, Henry and Edward, signed as witnesses at his request. The alleged will is written in pencil upon four pages of a medium-sized note book. With the exception of the small disputed area involving the legacy of $505,000, it is in the admitted handwriting of the deceased. The signature at the end of it is also conceded to have been made by him. The writing is most informal as a testamentary disposition of the estate to the various legatees mentioned in it. The paper is dated on September 27, 1925, whereas it is claimed to have been executed on October 26, 1925.

On the other hand, the testimony of the contestants showed that the paper had been used as a memorandum of what the decedent intended to include in his formal will which he was at the time engaged in drafting with his attorney. The contestants' evidence was also to the effect that the contested paper had been utilized by Daniel H. Jackson in a conference with this attorney on September 27, 1925, the date appearing upon it. The draft of the formal will was completed, but its execution was postponed from time to time by the decedent until his death intervened. On the contestants' side, the testimony was most convincing that the alleged will had never been executed by Daniel H. Jackson on the 26th day of October, 1925, as claimed by the proponent, or at any other time, and irresistibly pointed to the fixation of the signatures of his two brothers as witnesses without the knowledge of the decedent in his lifetime, or after his death. The contestants' proof, as established by the circumstantial and direct evidence, was that Daniel H. Jackson had left his house on the morning of October 26, 1925, at about ten-thirty, with his wife to go to his doctor, where he had an appointment at eleven o'clock, whereas the proponent's witnesses fixed the time of alleged execution in the taxicab with his brothers at approximately eleven-thirty that morning. Evidence of the physical weakness of the decedent, the improbability of his being able to walk the distance of several blocks from his home to the place where he was supposed to have entered the taxicab, was given. Damaging admissions of Harry H. Jackson, the proponent, and Edward H. Jackson, one of the subscribing witnesses, were the subject of testimony. These admissions were utterly at variance with the story of the proponent's witnesses that the paper had been executed as a will in the taxicab. To one person, Harry H. Jackson stated that the will had been executed on Riverside Drive

(not in a taxicab); two other witnesses testified that he said it had been executed in a hospital. Edward H. Jackson, one of the subscribing witnesses, stated to another person that the paper had been executed at Daniel Jackson's home on Riverside Drive. Other witnesses testified to conversations had with Harry H. Jackson after the death of Daniel H. Jackson, and before the filing of the paper which were inconsistent with the prior execution of the will.

The testimony of the handwriting experts of the contestants and the appearance of the contested document itself also tended to contradict the proponent's version of the alleged execution of the will in the taxicab.

It is argued by counsel for the proponent that the jury's verdict on the three special questions answered by them simply indicated that the jury found that the legal requirements of our law of wills were not complied with at the time of the alleged execution on October 26, 1925. No such conclusion can be drawn from the verdict or the opposing theories upon which the case was tried. All three questions were answered " No " by the jury. No issue had been raised in the case that there had been an innocent omission of one of the statutory formalities. But the contestants' main contention was that the paper had never been executed as a will. The two subscribing witnesses had testified to the acknowledgment of the signature by Daniel H. Jackson, to his declaration that the paper was his will, to the request by him to sign as witnesses, and to their compliance with that request. If the jury had believed them, the due execution of the will was proven, but the verdict itself establishes that their testimony was rejected and their story of the making of the will wholly disbelieved by the jury. The only inference, therefore, to be adduced from the jury's verdict is that the paper was a forgery within the legal sense of that word, in that a mere memorandum signed by the decedent and never intended as his will, was, without his knowledge, attested by his two brothers to comply with the forms of law and put forward as a valid will. (*Marden* v. *Dorthy*, 160 N. Y. 39; Penal Law, § 884; 2 Bouvier's Law Dict. [3d Rawle's Rev.] 1283.) The fact that the paper was signed by the decedent does not make it any the less a forgery, as was pointed out by the Court of Appeals in *Marden* v. *Dorthy* (*supra*). The term " forgery " includes the addition of the signatures of witnesses or of a false certificate of acknowledgment by which the spurious paper is given apparent legal effect never intended by the person whose signature appears upon it.

The evidence of fraud in the pretended execution of the paper offered here was overwhelming. In addition, although the jury was

not required to answer the question, it was conclusively established by the evidence that the alleged legacy to Harry H. Jackson in the disputed paper had been fraudulently altered by raising the amount from $5,000 to $505,000. It should be noted also that if this paper had been probated, and the fraudulent scheme consummated, the sum of approximately $600,000 would have been diverted from the widow and the two infant children of the decedent.

Upon a review, therefore, of all the evidence in the case, I am of the opinion that Harry H. Jackson's actual participation in procuring the signing of the paper by his two brothers as witnesses, in the publication of an altered instrument in which he was a beneficiary to the extent of $500 and $5,000, and his attempt to secure judicial recognition of the paper by a probate decree, all require a disallowance of any costs or expenditures to him payable out of the estate. These expenses, if allowed to the proponent, would divert several thousand dollars from the rightful owners of the estate. Fortunately cases of this kind are rare in the experience of probate courts, but where they occur they should receive the strongest judicial censure. One form of discouragement is the refusal to permit the financing of the operations of the fraud from the funds of the intended victims.

In its application to the facts here, the opinion of the Appellate Division, First Department, in *Matter of Marshall* (189 App. Div. 477, 481), where a similar request for reimbursement was denied, is particularly appropriate. The court said: " But where it is shown, as it was in this case, that the executor was a party to the fraudulent execution of the will and with full knowledge of the fraud he attempted to impose a false and fraudulent will upon the court, it is contrary to good morals and public policy that the estate should be mulcted in the costs and expenses of his unsuccessful effort to perpetuate the fraud."

Costs to the other legatees who were also unsuccessful parties are denied. Section 278 of the Surrogate's Court Act does not permit any allowance to them. (*Matter of Parsons*, 121 Misc. 747; affd., 208 App. Div. 769.)

Costs of the contestants are allowed against the proponent personally. Costs have been taxed in accordance with the foregoing decision and decree denying probate of the contested paper signed.