In the Matter of the Estate of Ella A. Rogers, Deceased.

Surrogate's Court, New York County, June 15, 1926.

**Wills — contested probate — will admitted to probate where evidence shows due execution, testamentary capacity and absence of undue influence — costs — contestant taxed personally for costs where contest was not brought on in good faith.**

The will of the testatrix, executed more than two years prior to her death, at a time when she was about seventy years of age, and disposing of an estate valued at $2,500,000, should be admitted to probate, since the evidence clearly shows valid execution, testamentary capacity almost up to the date of her death, and there is an utter lack of proof indicating undue influence.

Costs will be taxed against the contestant, personally, as the unsuccessful party in the proceeding, in the discretion of the court, since it cannot be said that the contest was brought on or continued in good faith.

Proceeding for probate of will.

*Ver Planck, Prince & Burlingame,* for the proponents.

*William R. Sharton* and *Lawrence Berenson* for the contestant Helen Rogers Bradford.

*A. Wheeler Palmer,* for Henry P. McGown, individually and as assignee of Addie L. Birdsall and others, contestants.

*Harris & Towne,* for Emily R. Nicoll, legatee.

*Battle, Vandiver, Levy & Van Tine,* for Theo. B. Rogers.

*Milton C. Lightner,* for Reginald M. Johnson.

Misc. 428]      Surrogate's Court, New York County, June, 1926.

*H. & J. J. Lesser,* for Bertha B. Rogers Wenzel and another, contestants.

*Wilson M Powell,* for Society of the New York Hospital.

*Zabriskie, Sage, Gray & Todd,* for the Cathedral of St. John the Divine.

*Emmet, Marvin & Martin,* for Home for Incurables.

*Henry G. Schackno,* special guardian.

*Jerome F. Donovan,* special guardian.

*Remsen & Parsons,* for New York Kindergarten Association.

*Simpson, Thacher & Bartlett,* for St. Mark's Hospital of New York city.

*Webb, Patterson & Hadley,* for Lincoln Hospital and Home.

*James A. Donegan,* for the Servants of Relief for Incurable Cancer.

*Charles F. Edsall,* for Edith R. H. Prentice, contestant.

*Benjamin F. Edsall,* for Mabel D. Heinisch and others, contestants.

FOLEY, S. In this contested probate proceeding the various objections filed raised issues (1) as to the validity of the execution; (2) the testamentary capacity of the testatrix, and (3) undue influence alleged to have been used in the procurement of the will. The will was executed on July 27, 1923. The testatrix died on January 9, 1926, leaving an estate which amounted to approximately $2,500,000. At the date of the will Miss Rogers was about seventy years of age. The contested paper was drawn by a reputable attorney of forty years' experience in his profession. Previous to the preparation of the will he had acted as the attorney of the testatrix for a considerable period. His testimony was most convincing as to the mental strength of the testatrix, and her understanding and appreciation of the provisions of the will. Numerous drafts of the will were prepared by him covering a period of some months, were submitted to her and were corrected and revised by her with keen discrimination. The testatrix knew that she had a certain power of appointment under her father's will and supplied a copy of the letter to her attorney. Many of the names of the beneficiaries were unknown to the draftsman, and the descriptions which found their way into the will were supplied by the testatrix. The only next of kin of the testatrix are cousins. The will is a

Surrogate's Court, New York County, June, 1926.          [Vol. 127

natural one. It gives legacies to various faithful servants, to employees and to close friends of the decedent. It provides for gifts to various charitable corporations and makes provision for a bequest of approximately $700,000 to the Cathedral of St. John the Divine in the city of New York. Two of her favored cousins, with whom an intimate association had been maintained during her whole lifetime, were likewise remembered. Her associations with her other cousins, and particularly the contestants, were either distant or negligible.

Upon the issue of execution, the testimony establishes complete compliance with the requirements of the law. The three subscribing witnesses were the draftsman, an attorney in the latter's office but not now associated with him, and a clerk of long experience in legal matters. Their testimony was uncontradicted. On the state of the record upon these issues relating to execution, therefore, at the close of the trial a verdict was directed in favor of the proponents.

On the issue of testamentary capacity, the contestants submitted the usual testimony of alleged eccentricities, peculiarities, stinginess, illness, and acts which impressed certain of the witnesses as irrational. The incidents which they described were trivial, inconsequential and easily explained. Their alleged impressions of irrational ;y did not necessarily or logically follow from the acts and conversations of the testatrix as described by them. For example, one witness testified that the fact that the testatrix kept pet dogs impressed him as " irrational; " another that she had a fear of burglars; another that she had a fear of fire, tests which would render incompetent many thousand strong-minded persons. Another testified that because she refused to eat vegetables damaged by worms, her conduct impressed him as " irrational." Most of their testimony, however, emphasized the contention of the proponent that the testatrix continued to possess, almost up to the date of her death, and certainly at the time of the execution of the will, a strong and vigorous mind. The testimony of the physician who attended her in her last illness (a witness called by the contestants) especially emphasized the retention of these mental powers. It appeared also that long after the execution of the will and up to a few days before her death, the testatrix possessed keen financial ability, attended to her business affairs and her investments, made intelligent written memoranda of financial transactions, accurately entered in the stubs of her check book the purpose of the checks drawn by her, and skillfully managed the large fortune left to her by her father. On the issue of testamentary capacity there was, therefore, insufficient evidence to carry the case to the jury under the rules laid down by the authorities in this State,

and a verdict was directed upon that issue in favor of the proponents. (*Matter of Case*, 214 N. Y. 199; *Matter of Burnham*, 234 id. 475, affg. 201 App. Div. 621; *Matter of Kennedy*, 229 N. Y. 567; *Matter of Brand*, 227 id. 630, affg. 185 App. Div. 134; *Matter of Heaton*, 224 N. Y. 22; *Matter of Meade*, 200 App. Div. 346; affd., 235 N. Y. 508; *Matter of Eno*, 196 App. Div. 131; *Matter of Dunn*, 184 id. 386; *Matter of Bourne*, 121 Misc. 12, 14.)

There was no evidence of any undue influence exercised upon the testatrix by Howland Pell, the residuary legatee, or any other person.  Mr. Pell was her first cousin.  For many years he has been in the insurance business in New York city.  He assisted Miss Rogers in the investment of her surplus funds.  The attorney who drew the will was freely chosen by Ella Rogers, the testatrix.  There was not a scintilla of evidence in the record to show that Pell had influenced the making of the will, or the bequest in his favor.  The larger part of the estate went to persons other than himself, or to charities.  It appears conclusively from the evidence that Pell never was informed of the preparation, drafting or execution of this particular instrument.  The testimony of the draftsman was especially strong upon this point.  There was no evidence of direct pressure, no evidence of coercion, duress or domination exercised over the testamentary act itself.  (*Matter of Ruef*, 180 App. Div. 203; affd., 223 N. Y. 582; *Matter of Price*, 204 App. Div. 252; affd., 236 N. Y. 656; *Matter of Kindberg*, 207 id. 220.)  While the confidential relation which he occupied to the testatrix in the purchase of her investments might have required explanation, or imposed a duty upon him of satisfying the court that the will was the free and untrammeled expression of the wishes of the testatrix (*Matter of Kindberg*, 207 N. Y. 220), such duty or burden was completely met by him.  Moreover, it should be noted that the financial transactions which took place between Miss Rogers and Pell were the subject of an exhaustive examination by counsel for the contestants.  Not a single dollar of hers was shown to have been diverted by him.  His entire conduct of her affairs reflects the most scrupulous honesty.  On the issue of undue influence, there was no evidence to carry the case to the jury and a verdict was directed in favor of the proponents.  (*Matter of Ruef*, 180 App. Div. 203; affd., 223 N. Y. 582; *Matter of Price*, 204 App. Div. 252; affd., 236 N. Y. 656; *Matter of Kindberg*, 207 id. 220; *Smith* v. *Keller*, 205 id. 39.)

In my discretion, costs will be taxed against the contestants personally.  It cannot be said that the contest was brought on or continued in good faith.  The case was originally placed upon the calendar as a non-jury case.  At the last moment a jury was

demanded, thereby imposing an additional burden of expense upon the beneficiaries of the estate. The examination of the subscribing witnesses before trial and the long and exhaustive examination of the person charged with undue influence together with a reading of the decision of the Appellate Division and the Court of Appeals should have led the contestants to recognize the futility of attempting to set aside the will. In spite of their knowledge of the facts, they persisted in the trial of the contest and justice requires that they should be assessed with costs as the unsuccessful parties in the proceeding.

Costs taxed and decree admitting will to probate signed.