In the Matter of the Estate of JOHN S. BARRY, Deceased.

Surrogate's Court, Rensselaer County, April 13, 1932.

*Lindsley McChesney*, for Maria Louise Perry, executrix and proponent.

*W. O. Howard* [*John P. Taylor* of counsel], for Charles H. Barry, legatee.

*H. P. Humphrey*, for Evangelical Lutheran Church of Pittstown, legatee.

*Hubbard & Koplovitz*, for Helen M. Gibbs, contestant.

WAGER, S. The decedent, John S. Barry, died in the town of Pittstown, Rensselaer county, on the 31st day of August, 1931. The paper offered for probate as his last will and testament bears date January 14, 1922, and is concededly as to the first two pages in his own handwriting, except as to certain interlineations. The third half page, upon which are the signatures of the testator and of the witnesses, is claimed to be a forgery by the contestant, and the only issue presented to the court and jury on the trial was whether or not this third page and the signatures were made by the testator and by the witnesses, or were forged. The paper was written on ordinary ruled legal cap, the first two pages being a part of one sheet and the third page part of another sheet of slightly different character of paper.

Decedent was never married, and was eighty-seven years of age at the time of his death, and left as his only heirs and distributees two nieces, Maria Louise Perry and Helen M. Gibbs, and two grand-nephews, Lindsley McChesney and Charles H. Barry. Helen M. Gibbs filed objections upon the usual grounds, demanded a jury trial, which was had, commencing the 1st day of March, 1932,

and, as stated, the only real question litigated was to the genuineness of the third half page of the document upon which were the alleged signatures of the decedent and the witnesses to the document. The jury failed to agree upon a verdict.

Prior to the submission of the questions to the jury, the contestant made a motion for a dismissal of the petition and the direction of a verdict denying probate, and the proponents made a like motion for the direction of a verdict. The surrogate denied the motion, with leave for counsel to renew after receiving the verdict of the jury on two questions. The first question was, " Did John S. Barry sign his name to the paper writing offered for probate in the presence of William H. Watts and Earl Arthur Watts? " The second was, " Did William H. Watts and Earl Arthur Watts sign their names as witnesses to the paper writing offered for probate in the presence of said John S. Barry and at his request? " The jury could not agree upon an answer to either question, and was discharged. The proponents then renewed their motion for the court to make findings and a decree admitting the will to probate, which was opposed by the contestant. Two questions, therefore, had to be answered; the first, as to the power of the surrogate to make findings and to enter a decree thereon admitting the will to probate, and the second question is, " Do the facts and evidence produced warrant such findings that the alleged will should be admitted to probate? " The law and the authorities seem to be settled that the surrogate has authority to make such findings if the evidence warrants it. Section 69 of the Surrogate's Court Act, relating to a trial with a jury, provides that " The trial shall proceed in the same manner as if such trial were had in the Supreme Court at a trial term thereof, * * *. The provisions of law relating to trial of a civil action by the Supreme Court and a jury, and to a motion for new trial, shall apply to Surrogate's Courts and to the proceedings. therein so far as they can be applied to the substance and subject matter of such proceedings without regard to form, * * *." We find further authorities as to the rights and duties of surrogates in relation to the probate of wills where a jury trial is demanded in several cases, two of which will be cited as leading authorities. The first is *Matter of Price* (204 App. Div. 252). In that case the jury failed to agree upon a verdict, and the surrogate thereupon directed the jury to answer the questions submitted, and admitted the will to probate. In *Matter of Nicholas* (216 App. Div. 399) the jury found that the decedent was at the time of the making of the instrument not of sound mind and memory and was not capable of making a will. Subsequently thereto the surrogate set aside the findings of the

jury and made a decree admitting the instrument in question to probate. The Appellate Division affirmed the decree of the surrogate, with opinion, and this decree was subsequently affirmed by the Court of Appeals. (See 244 N. Y. 531.)

The surrogate, therefore, holds that he has authority to pass upon the question as to whether or not the proof warrants a finding that the paper offered herein for probate is the last will and testament of John S. Barry.

At the time decedent made the alleged last will and testament he was living alone in a large farm house in the town of Pittstown, about ten miles from the city of Troy, with only a housekeeper, a Mrs. Van Wert. The two witnesses were father and son, and were occupying another farm owned by the decedent. On the 14th day of January, 1922, the witnesses were at the farm occupied by the decedent and were asked by the decedent to come in the house, at which time the paper was signed and witnessed as decedent's will. The two witnesses positively swear to the making of the signature by the decedent; of his request that they witness the same, and that they signed in the decedent's presence and in the presence of each other. From that date until after the death of Mr. Barry no evidence is produced that any person outside of himself ever saw or handled this document. At this time, 1922, Charles H. Barry, grandnephew, was at Alfred University, and was about twenty-one or twenty-two years of age. Subsequently, and on the 10th day of January, 1925, Charles H. Barry went to live with his granduncle, the decedent, and remained with him until his death. The two were the only occupants of the home, the young man looking after the household, doing the cooking, etc., as well as looking after the affairs of the farm. Maria Louise Perry, the niece and proponent, was living in California and in New York city, and as far as the evidence disclosed never visited her uncle during these years. The grandnephew Lindsley McChesney lived in the city of Troy and it is not disclosed that he visited his uncle, nor is it shown that the contestant, who resided not far away, ever visited her uncle during these several years. The document was found in a locked tin box with a number of other papers as well as decedent's bank books, on the day following his death, and was taken by Charles H. Barry to Judge Howard's office on the same day, and a few days later it was filed in the surrogate's office. It was not disputed that Mr. Barry had full capacity to make a will and that he was not under any restraint or subject to any undue influence at the time in question. It was not contested that the testimony of the witnesses shows a complete formal execution of the document; and the only issue raised for

a decision was the question regarding the genuineness of the third page or third half page of the document. The witnesses did not see the contents of the paper at the time it was signed and it was not read to them. The testimony adduced on behalf of the contestant consisted of the evidence of a handwriting expert, who made the examination of the document and who testified that in his opinion the whole third half page was in the handwriting of one individual, including the signatures, and that it was written by some person other than the man who wrote " John S. Barry " on the first line of the first page of the document. It was conceded that the two first pages were in decedent's handwriting except a couple of interlineations. This witness on behalf of the contestant gave it as his opinion that someone wrote this third page from a mental picture, after having practiced some time and without having a copy of the genuine handwriting actually before him. In addition to the testimony of the subscribing witnesses as to the genuineness of the decedent's signature and of their own, the proponents produced the evidence of some bankers who knew decedent's handwriting and who had seen him write; produced the genuine signatures of decedent from the records in Surrogate's Court in matters wherein he had been interested; his signature to bank drafts or orders, and these several witnesses all testified to their belief that the signature and writing on the third page of the document offered for probate as decedent's will was the genuine handwriting of the decedent.

In considering whether or not this third page was forged, we must find whether or not someone had an opportunity to obtain the document; someone had an object in forging it; some gain or benefit to be acquired by doing it, considering all the circumstances under which the decedent lived and how this paper and his other papers and books were kept. On this third page, which it is claimed was forged, decedent named Maria Louise Perry and some other person as executrix and executor of his will, directed that the inheritance tax be paid from the residuary estate, which residuary he gave to Maria Louise Perry, and this is followed by the signatures of Mr. Barry and of the two witnesses. The name that was written in for executor of the will was erased by a metal eraser, and it is impossible even by the use of a glass to determine whose name it was. It will be seen, therefore, that the only person who would benefit by the forgery of this part of the will is Maria Louise Perry, and she was not on the premises in question from January 14, 1922, until after his funeral in 1931. The other niece and grandnephews who would take in case there was no will receive no benefit from this third page. The jury failed to agree upon a verdict as to the

questions submitted. The Evangelical Lutheran Church of Pitts-
town, of which decedent was a member, was given a legacy of
$10,000. It was further shown that the expert witness,
Mr. Hamilton, called by the contestant, had first been shown the
alleged will by Mr. McChesney, the attorney for the proponent,
and that Mr. McChesney did not consult him any further in the
matter. It further appeared from the testimony that in some of the
bank books in the tin box in which the will was found and belong-
ing to the decedent the name of Maria Louise Perry, niece, was
placed thereon as a joint owner with the decedent. That the jury,
or some of them, desired to reconstruct the will for decedent, or
rather wandered afar from the questions submitted to them by
the surrogate, will be found in three questions which they asked of
the court some two or three hours after they had deliberated in the
case. The first question was, " If the will is declared as not signed
by John S. Barry, is the entire will thrown out and will the Lutheran
Church and all the others? " The second question was, " Why
did Mr. McChesney ask Hamilton about the will, and why did
he drop Hamilton immediately after? " The third question was,
" Did Maria Louise Perry receive the money from the bank books
or was the entire amount on deposit put into the estate? " The
surrogate is satisfied from the evidence that if the jury had found
against the validity of this paper the verdict should have been
set aside as against the clear weight of evidence; and is also satisfied
that the clear preponderance of evidence viewed from every angle
warrants no other conclusion than that the document offered for
probate is the genuine last will and testament of the decedent and
should be admitted to probate.

Let findings be submitted in accordance with this opinion, and
a decree be entered thereon admitting the will to probate.