In the Matter of the Estate of LUELLA J. ROBERTS, Deceased.*

Surrogate's Court, Monroe County, January 25, 1933.

* See, also, 235 App. Div. 378.

*George H. Harris*, for the executor.

*James G. Dale*, special guardian.

*Harris, Beach, Folger, Bacon & Keating*, for the Friendly Home and Pleasant View House.

*Ralph H. Culley*, for the First Church of Christ, Scientist.

*John Van Voorhis' Sons*, for the contestants.

FEELY, J. The proponent, the special guardian, and one of the legatees, each now move to charge personally on the contestants separate bills of costs in the probate proceeding in which the jury upheld the last will and codicil of this testatrix. The union of the inconsistent interests of the two contestants, and on the other hand, the fact that in upholding the will the proponent also protected the legatees thereunder, including the infant, permits a discussion in which the question need not now be divided.

The contestants put in issue the sanity of testatrix, the compliance with the statute on executing the writings; and they also denied that the propounded papers were the last will. None of those matters were allowed to go to the jury. They were but special denials of some features essential in proponent's case, as was also the like denial that these writings represented the free act and deed of testatrix. On this latter question, the verdict was for the proponent.

If the denial of compliance with the statute be considered by itself alone, there would be no doubt that after having had the

preliminary examination of the two well-known lawyers and their stenographer, who were the three attesting witnesses, the contestants had not the slightest ground to succeed on their denial of due execution, for it was not based on any prospect whatever of success in this regard except such as chance might happen to afford later on, in the cross-examination on trial; and contestants having gone on without that assurance, would justify granting this motion. (*Matter of Whelan,* 2 N. Y. Supp. 635; *Matter of Rogers,* 127 Misc. 428; *Matter of Burnstine,* 144 id. 254.) Likewise, there was never any reason to believe there was a later will. In so far as the court took these and other parts of the issue from the jury and directed a verdict, there was ground to say the contest, to that extent, was without foundation. (*Matter of Rogers, supra.*) That a trial court directed a verdict, or should have done so, is a very important factor in such motions as this.

There was also a failure of proof on the point of sanity; after the contestant McBain had succeeded, on appeal (235 App. Div. 378), in getting " her day in court " on that subject, notwithstanding this portion of her pleading had originally been stricken out as known by her to be false when made and verified by her. What makes this failure less material now, however, is the fact that the decedent's mental state, as shown by all the testimony, did go to the jury as an essential factor in the problem of determining whether or not there was a lack of freedom, in the use of such ability as she had, in the act in question. (*Matter of Heughes,* 144 Misc. 922.) Around this latter point centered the great bulk of the testimony; and so, in the consideration of this motion, it is an important fact that a considerable part of the original issue did go to the jury, although as to other parts of it the contestants utterly failed.

The special guardian now urges that the contestant McBain depended on a prior will for her status herein; and that to save it from revocation she put in the plea the testatrix was totally incompetent for the last six years of her life, including the date of the later will. It will be recalled that this contestant also pleaded that the deceased for all that period was under undue influence; and that the ruling of the court as to her status was favorable in part to this contestant, in respect to the " common-law " proof of a lost will as a collateral issue — the rest being involved in the matter of ability and freedom which went to the jury.

The ultimate defeat of the contestants by the jury shows the proponent was put to expense, without adequate cause. Only a comparatively meagre compensation therefor is possible, in any event; and that only as allowed by statute. This court is authorized

to make costs "payable by the party personally, or out of the estate, or fund, or out of the share or interest therein of any person or from both, in such proportion as the surrogate may direct, and justice requires." (Surr. Ct. Act, § 276.) The grounds for any such award are not specified in this statute; but they have been worked out by judicial interpretation. It has thus been settled that the power rests in discretion, but that it is not an uncontrolled one — as where an attorney defendant succeeded in having dismissed at trial a charge against him of fraud and misrepresentation in procuring the execution of a lease, it was held not a proper exercise of discretion to deny him costs against the plaintiff. (*Husted* v. *Van Ness*, 1 App. Div. 120; 158 N. Y. 104.) There, BARRETT, J., wrote: " We find nothing but unsupported charges of fraud. Mr. Van Ness has been compelled to rest under these charges until trial, and to defend himself against them. It seems a poor measure of justice to dismiss such charges without awarding him even the meagre recompense which the law allows. The dismissal without costs would seem to indicate that, while the plaintiff failed to establish his charges, there was at least some slight basis for their assertion. Thus, Mr. Van Ness is wronged not only in pocket, for he has had to bear the expense of defending the action, but in reputation. The latter should not be thus left in doubt, for it is apparent that the charges were entirely wanton and gratuitous. Nor should the plaintiff be permitted to escape the ordinary consequences of making unfounded charges. Otherwise, there would be encouragement to slander under the protection of judicial proceedings."

It is difficult to perceive the reasons for drawing the subtle lines between the ordinary run of actions for damages where the demand is said to be liquidated, and those that are unliquidated, and those that are more than usually complex; and thus make costs a matter of right in some classes, and a matter of discretion in the others. It is clear, however, that in the usually multifarious proceeding *in rem*, and in cases calling for the extraordinary remedies on the equity side of the court, costs are discretionary, within the limits of the statute. Most surrogate " decrees " are *in rem*, and in the nature of an equitable determination, as the term itself implies (*Lawrence* v. *Lindsay*, 70 N. Y. 566); and thus the section of the Surrogate Court Act quoted above is largely declaratory of the rule that traces its origin, with some of the jurisdiction of the court, back to equity sources. The decree of probate is on a " common-law " issue that carries with it a right to trial by jury; but the statutes on costs make no exception in that respect in so far as the Surrogate's Court is concerned — whatever may be the rule on

issues joined in Supreme Court on last wills that contain a devise of land. Aside therefrom, costs are discretionary there also in actions to establish a will. Even where trial by jury is had in an equity action, the allowance of costs rests in the discretion of the court. (*Sheldon* v. *Solomonson*, 131 Misc. 233; *Weston* v. *Stoddard*, 62 Hun, 619.)

What, then, are the equitable reasons that govern the use of this power by the surrogate to award the successful party his statutory damages against the other party " *pro falso clamore suo*," as the old writers put it? One ground has already been mentioned, namely, where the issue arose out of an " unsupported charge of fraud," that was " entirely wanton and gratuitous," as well as libelous. (*Husted* v. *Van Ness, supra.*) So in the like case of *Matter of Rogers* (127 Misc. 428), there was an utter lack of evidence, and a verdict was directed. In the *Jackson Case* (127 Misc. 187) the unsuccessful party was found to have been the chief actor in preparing a spurious will; and there it was held, on the authority of the *Marshall Case* (189 App. Div. 477, 481), " the estate should not be mulcted in costs and expenses of his unsuccessful effort to perpetuate the fraud." Another group of cases might be classified as mere " strikes," or " hold-ups." Thus, in the *Sillings Case* (2 N. Y. Supp. 637) the objectant was forced to admit his objecting to an account, resulting in a reference, was only " a bit of strategy in the course of their campaign to assert title in their father to a considerable part of the estate which the executor had in his possession as part of the testator's estate," and thus cause delay until the objectant could bring an action against the executor. In the *Lowman Case* (1 Misc. 43) the contest was wholly without merit, and was probably " brought for some ulterior purpose." In the *Whelan Case* (*supra*) the objectant was held to have had no real cause for believing the will invalid; but objected merely " in the hope some fact might develop in his favor." He offered no testimony. In subjecting the proponent's witnesses to an exhaustive cross-examination, he was said to have " indulged in a fishing excursion; " and had seemed " to grope about with a wavering hope that something may turn up which shall be of advantage." The surrogate there condemns willful blocking of probate procedure, especially, when done for the purpose of " forcing some recognition of fancied rights."

The fact that such a losing party persisted in his course to the extent of forcing upon proponent the expense of trial by jury is a contributing factor in evidencing his bad faith. (See *Matter of Rogers, supra.*) Whether the mere fact of having put proponent to the additional expense of trial by jury would, alone and by

itself, justify the personal imposition of costs seems very doubtful to me. I never heard of any such rule; and I have, as yet, been unable to verify the suggestion made by proponent that my predecessors on this bench established such precedent in the case of *Matter of Goes* (199 App. Div. 953), and that of *Matter of Johnson* (unreported). In the more complex state of facts on this motion it is not necessary to resolve that particular doubt. In this connection it may be observed that merely having gone to the jury will not necessarily prevent a personal charge of costs where the case submitted was slight and presented little more than the so-called scintilla. It is good luck, rather than good faith, to have escaped a nonsuit, or directed verdict, merely " by the skin of one's teeth." In that classification, apparently, belong the *Goes Case (supra).* where the higher court held a verdict should have been directed on the whole issue, the *Johnson Case (supra)*, and *Matter of Seagrist* (1 App. Div. 615). In the last case the court said: " The case made by the proponents was very strong, and that made by the contestants was very weak, and there is no aspect of this case, even considering all the testimony that was offered, by which a contrary result could have been reached." But in *Matter of Corbin* (101 App. Div. 25, 28) the court said: " The personal imposition of costs under this section (S. 2557 C. C. P. [new S. 275 S. C. A.]) has generally been deemed punitive in character and does not seem to be justified as against a contestant some of whose material objections were well founded and should have been sustained by the surrogate." To the same effect is *Matter of Carter* (199 App. Div. 405).

In *Matter of Castle* (2 N. Y. Supp. 638, 1888), the contestant not having offered any testimony, Surrogate RANSOM declared it was impossible that this party ever " had a shadow of belief " that the will was not genuine; and that they never expected to succeed. In charging them personally with costs, the surrogate made the best formulation to be found in the books of the test for the proper exercise of discretion so to do when he said that it depends upon " evidence of the good faith of the contestant, and a fair prospect of his success that will convince the mind of any intelligent lawyer * * * there was reasonable ground for the contest, and some independent evidence to support it."

What, then, can be said for the contestants towards overcoming both the presumption generally attaching to defeat, and also the imputation of bad faith, as defined above? This trial lasted twenty-four full days, during a considerable portion of which the contestants took up the entire time of the court in presenting their own independent evidence, both as to status and as to the main

issue, calling some twenty-five material witnesses, all their own, and introducing numerous exhibits, aside from producing the great mass of documentary evidence required of them by the proponent in cross examination, all of which exhibits reached the number of two hundred and forty-two. The range of the testimony was too wide to attempt even a summary of it here. There was substantially more than a scintilla of evidence for the contest. The facts, as a whole, were submitted to the jury, after the trial court had denied the several motions made to dispose of the issue as matter of law. In the face of such submission, it cannot successfully be claimed that contestants did not show any facts tending, at least, to sustain some of their objections. In the end, the jury favored the lawyer proponent as against the lay persons contestant, notwithstanding the lawyer, who had known testatrix for less than a year, had drafted the will in question, under which he stood personally to benefit, in an amount that, as a matter of possibility, might have been very great. While this shows how much the stronger in the end was the case the lawyer party succeeded in making out, to the jury, this outcome does not take off from the initial " fair prospect of success " the contestants had, for that very reason, among others, in the peculiar circumstances of this case, as a matter of fact — not to mention the confusion that exists on the law, occasioned by the mode of expression in certain opinions that has beclouded the burdens of proof in such cases. In a confidence, reinforced by success, the proponent argues, at length, that the contestants always had such a complete knowledge of all the facts that they must be deemed to have been aware, from the start, they could not succeed in anything but in depleting this estate by the expense of litigation. Notwithstanding their partial failures and reckless allegations, above mentioned, the contestants not only established status, but also did succeed in getting to the jury with much more than a mere scintilla in their favor, on the larger and inclusive issue; and that measure of success, I think, offsets whatever ground there may be to suspect their motives.

Serious as expense must be to this estate, I am of opinion the costs of this attack upon it, unsuccessful though it was, cannot be charged upon the contestants personally on any application of the test established by the decisions quoted above.

Each of the motions to that end is accordingly denied; and orders to that effect may be entered.