Edmund A. McCarthy, S.
In the proceedings for the judicial settlement of the account of the executors in the above-entitled estate, an order is requested fixing an amount to be charged against the legacy of Francis Coyle for costs, disbursements and expenses incurred in connection with the claims of said Francis Coyle.
The special guardian of Francis Coyle, Thomas Burke, objects to the allowance of certain items in Exhibit “ C ” of the account and also objects to the executors’ request for an order, on the ground that there is no basis in fact or in law for such charges and also on the ground that the mental condition of his patient is such that the law excuses him from responsibility for his acts in this matter.
*472 Rose Rourke died a resident of the City of Little Falls, in June of 1953. She was survived by a number of nieces and nephews including Francis Coyle, formerly of Detroit, Michigan.
Subsequent to her death, Francis Coyle filed in Surrogate’s Court two proofs of claim based upon promissory notes alleged to have been executed by the decedent, one for $40,528, and the other for $58,765.60.
The executors rejected these claims and proceedings were held in this Surrogate’s Court to require the claimant, Francis Coyle, to appear for examination. This he failed to do and by an order of Surrogate’s Court in December, 1953, his claims were stricken from the record.
In November, 1953 Francis Coyle commenced an action on the above-mentioned notes in the District Court of the United States of Detroit, Michigan. His demand for judgment on the notes and interest totaled $146,903.30.
This suit was defended by the executors and an examination of Francis Coyle was held in Michigan and the case in the District Court of the United States was dismissed.
Subsequently, the said Francis Coyle continued the litigation in the State of Michigan, in the District Court of the United States and the executors were compelled to oppose these efforts and the dismissal of the action as commenced was upheld.
As a result of the filing of these claims in Surrogate’s Court and the litigation in Michigan, additional expenses, disbursements and legal services were incurred on behalf of the executors in preserving the assets of the estate, which would not have occurred in the ordinary procedure of administration of this estate and were caused wholly and solely by the action of Francis Coyle.
The executors in the lawful discharge of their duty, were compelled to protect the rights of the legatees of the decedent and to defend this estate against improper claims.
Sections 276 and 278 of the Surrogate’s Court Act provided that “ costs ” may be made payable by a party personally or out of the share or interest of any person. Costs may include disbursements, expenses and counsel fees. Where a person interposes unfounded litigation, these unnecessary costs and expenses may be charged against him.
‘‘ He alone has caused the expense, and if he' prefers to spend his money in that way, should not be denied the privilege.” (Matter of Wolke, 155 Misc. 235, 237; Matter of Rogers, 127 Misc. 428; Matter of Sloat, 143 Misc. 170.)
The objections to the items of Schedule “ C ”, are overruled because the evidence of the handwriting expert was of benefit *473 to the estate, and a legal and authorized disbursement to determine the genuineness of the promissory notes filed by Francis Coyle, and these items are hereby allowed.
Further objection was made that Francis Coyle’s mental condition excused him from legal responsibility. This objection raises a very serious question. Ordinarily a non compos is liable for his tortious acts to the same extent as a normal person.
However, there are exceptions where intent is a necessary element.
The reasons for this rule allowing recovery for the tort of a non compos person is predicated on three premises.
No. 1 — Where one of two innocent persons must bear a loss, it should properly fall on him whose act caused it. The sufferer is in no way to blame and the non compos must bear the loss as he bears his other misfortunes. (Williams v. Hays, 143 N. Y. 442.)
No. 2 — Public policy requires the enforcement of such a rule in order that friends and relatives of the non compos, and especially those who have expectancy in his estate, and who might therefore expect to suffer from any diminution of the same by reason of the payment of damages will be induced to restrain the non compos; it being readily seen that relatives who might otherwise selfishly allow the non compos to injure others, would be moved to watch over and restrain him when the result of such injuries would indirectly fall on them.
No. 3 — So deep is the cunning of the evildoer that it is extremely difficult to detect the ruse when he is feigning insanity as a cloak under which he may safely work his nefarious ends. The rule is therefore necessary in order that the evildoer may not be led to simulate madness as a means of escaping the consequences of his tortious acts.
The classes of torts for which an insane person may be responsible cover practically the entire field with a few exceptions.
Though an insane person may not be criminally liable, he may nevertheless in most cases, be made to respond in damages for his act as of tort. For example, he may not be prosecuted for murder but he may be sued by the surviving relatives of the victim for compensatory damages.
Similarly, he may be made to answer for damages for assaults, arson, trespass and conversion. Accordingly, he may be made to answer for acts which may be quasi-criminal in their character, although they may not be actually punishable as a crime. For instance, fraud, destruction or injury to property; infringement of patents.
*474 The guardian of a non compos may recover against his ward for torts committed against himself. He may be held in questions of negligence to the same degree of care as normal persons.
The most emphatic exception to the rule is where an evil intent or animus is a necessary ingredient. (Smoot on Insanity, ch. 13.)
A tort has been described as any wrongful act.
The litigation in Michigan was unnecessary and apparently by its dismissal, unjustified, and while there may not have been any malice in the litigation, it was expensive for the innocent legatees of the estate, and under the Surrogate’s Court Act, they should be protected financially from the interest share or part of the non compos person.
The history of the controversy involving these claims of Francis Coyle shows that there was no ground for the institution of such a suit. Litigation was reckless, lacking in merit and without foundation. Consequently, it seems advisable in our opinion, to allocate the legal expenses, not against the legatees of decedent, but against the one who instituted such litigation. (Matter of Bishop, 277 App. Div. 108; Matter of Ungrich, 201 N. Y. 415.)
It is the determination of this court that the share and interest of Francis Coyle in the estate of Bose Bourke should be charged with the expenses, disbursements, costs and legal services which the estate was compelled to incur in protecting its assets from the unwarranted action of Francis Coyle.
Prepare decree accordingly.