In the Matter of the Petition of JOHN W. RUEF to Prove the Last Will and Testament of GEORGE A. WILLIAMS, Late of the County of Kings, Deceased.

GEORGE C. WILLIAMS, Contestant, Appellant; JOHN W. RUEF, Proponent, Respondent.

Second Department, November 19, 1917.

Will — contest — undue influence — evidence — burden of proof — when evidence should not be submitted to jury.

An inference of undue influence cannot be reasonably drawn from circumstances when they are not inconsistent with a contrary inference.

The rule that the confidential relation of the grantee to the grantor casts upon the grantee the burden of showing that she had not exercised a forbidden influence, and that the conveyance was fair and honest and free from fault, is confined to cases of contracts or gifts *inter vivos* and does not apply, in all its strictness at least, to gifts by will.

The burden of proof of undue influence in a will contest rests on the contestant and does not shift.

In order to avoid a will on the ground of undue influence, it must be shown that the influence exercised amounted to a moral coercion which restrained independent action and destroyed free agency, or which by importunity, which could not be resisted, constrained the testator to do that which was against his free will and desire, but which he was unable to refuse or too weak to resist.

In determining the amount of pressure which will avail to substitute another's will for the testator's, the physical and mental condition of the testator is of primary importance.

Proof of age, blindness, drunkenness, change of testamentary intent, inconsistency between the will and previously expressed intention, injustice in the disposition of the estate, dependence upon the chief beneficiary, created by blindness and the influence of her constant presence does not without evidence of direct pressure, especially when the will was drafted by a lawyer freely chosen by the testator, constitute evidence which will support a verdict that the will was the product of undue influence.

Evidence in a will contest involving the above circumstances examined, and *held*, insufficient to establish undue influence.

Where such evidence is not sufficient to support a verdict, it should not be submitted to the jury.

MILLS and PUTNAM, JJ., dissented.

APPEAL by the contestant, George C. Williams, from a decree of the Surrogate's Court of the county of Kings,

entered in the office of said Surrogate's Court on the 11th day of November, 1916, admitting to probate the will herein, and also from an order of said Surrogate's Court, entered in the office thereof on the 4th day of December, 1916, denying the contestant's motion to set aside the verdict of the jury in this proceeding and for a new trial.

The trial was before a jury on issues framed on the motion of contestant. The surrogate directed the jury to find for the proponent on the issues of testamentary capacity and undue influence, and submitted to the jury the question of the due execution of the will. Upon this issue the jury found for proponent. The decree was entered on the verdict of the jury, as directed and found, and from it the contestant appealed. The facts are stated in the opinion.

*Henry F. Cochrane*, for the appellant.

*James M. Gray*, special guardian, for the incompetent contestant Edward A. Williams.

*Charles H. Beckett* [*Paul E. Mead* with him on the brief], for the respondent.

BLACKMAR, J.:

The evidence abundantly supported the verdict on the issue of the due execution of the will; nor was there any evidence which required the submission to the jury of the question of testamentary capacity. Upon these two issues the evidence for the proponent was ample and without substantial dispute. A careful reading of the record and the elaborate and well-considered briefs of counsel leaves us with the opinion also that the surrogate was justified in directing the jury to find that the will was not secured by undue influence. It is true that the evidence is consistent with the hypothesis that the chief beneficiary induced the will by undue influence; but it does not support such inference, for the evidence is not inconsistent with the assumption that the will expressed the testator's own voluntary intent. An inference of undue influence cannot be reasonably drawn from circumstances when they are not inconsistent with a contrary inference. (*Boyse* v. *Rossborough*, 6 H. L. Cas. [2d ed.]

50.) " It must have been shown that such coercion, duress or domination was exercised over the very testamentary act itself." (*Matter of Fleischmann*, 176 App. Div. 785, 786; *Matter of Powers*, Id. 455.)   It has been held in the case of a gratuitous conveyance *inter vivos*, that the confidential relation of the grantee to the grantor casts upon the grantee the burden of showing that she had not exercised a forbidden influence, and that the conveyance was fair and honest and free from fault which demands the condemnation of a court of equity.   (*Allen* v. *La Vaud*, 213 N. Y. 322.)   This rule is, however, to be " confined to cases of contracts or gifts *inter vivos*, and does not apply, in all its strictness at least, to gifts by will." (ANDREWS, J., in *Matter of Smith*, 95 N. Y. 516.)   The rule is unimpaired that the burden of proof of undue influence in a will contest rests on the contestant and does not shift. (*Matter of Kindberg*, 207 N. Y. 220.)   The question in the case at bar is whether there is evidence in the case that would support the verdict of a jury that the will was induced by undue influence.

In order to avoid a will on the ground of undue influence, " it must be shown that the influence exercised amounted to a moral coercion, which restrained independent action and destroyed free agency, or which, by importunity, which could not be resisted, constrained the testator to do that which was against his free will and desire, but which he was unable to refuse or too weak to resist." (*Children's Aid Society* v. *Loveridge*, 70 N. Y. 387.)   In determining the amount of pressure which would avail to substitute another's will for the testator's, the physical and mental condition of the testator is of primary importance.   A will enfeebled by age, infirmity or dependence might be bent by pressure which would not influence one in health and mental vigor.   The testator, when the will was executed, was eighty-two years of age, addicted to the excessive and continuous use of alcohol, blind and, therefore, dependent on his daughter, with whom he lived, for many personal offices   The will seems unjust.   Two sons, both heads of families with whom he had lived, both with slender means of support, one, stricken with insanity, who before his affliction had for twenty years managed the testator's business and, as the old man said, had been the support of

five families, were cut off.   The insane son and his wife were the only members of testator's family for whom he expressed affection, and he continually mourned over this son Edward's sad condition.   He had resisted going to live with his daughter until forced to do so by the fact that the families of both sons were broken up by domestic troubles.   He had expressed the determination never to make testamentary provision for his daughter, saying that those Buchanans had enough; but after living for a year in his daughter's flat we find him making a will disregarding all other claims of nature, and leaving substantially his total estate, amounting to about $90,000, to this daughter.   The testator and both his sons had had domestic troubles and were separated from their wives; the daughter for many years sided with her mother, and it was only after the death of his wife, and as a last resort, that he went to live with her.   The testator was a cheerful, frivolous trifler, and made a saloon, which he called a " booze bazaar," his constant place of resort.   He began to drink before breakfast, and continued through the day, and was often under the influence of liquor.   His son Edward, who had for twenty years managed his business, became insane about January 1, 1915.   A committee was appointed, apparently on the petition of the father.   His daughter acted usually as the medium of communication between the testator and the lawyer whom he had chosen and who drew the will.   The will was executed May 5, 1915, and testator died about a year afterwards.   The members of his sons' families made attempts to see the testator, and sometimes, but not always, were turned away by the daughter with the statement that testator was ill or in bed, or did not want to see them.   He had created certain savings bank trusts aggregating about $14,000, which indicated a disposition to recognize his children equally.   And his daughter had been prodigal in volunteering assertions of his testamentary capacity.   The will, however, was drawn by an attorney chosen by the testator and not by his daughter.

Upon this background of facts, slight evidence of pressure might warrant a finding of undue influence, but such evidence is not in this case.   These circumstances themselves are not such evidence.   To reach the result of undue influence,

there must be added to these conditions a surmise or conjecture. The testator's property was his own. Under our system of law, he had the power to do with it as he chose, providing he did not leave more than half to charity. The law does not constrain a testator to be just, or to recognize natural claims upon his bounty. So long as the will is his own and not another's, it must stand. If the will was unjust, that seems to have been the natural character of the man. He was unjust to his son George, apparently for the very offense of which he himself was guilty; and neither was Edward just to his brother, when he repelled his appeals for aid. The conclusion which we reach is that proof of age, blindness, drunkenness, change of testamentary intent, inconsistency between the will and previously expressed intention, injustice in the disposition of the estate, dependence created by blindness on the chief beneficiary, and the influence of her constant presence, does not, without evidence of direct pressure, especially when the will was drafted by a lawyer freely chosen by the testator, constitute evidence which will support a verdict that the will was the product of undue influence. If the evidence is not sufficient to support a verdict, it is " 'in the eye of the law, no evidence,' " and should not be submitted to a jury. (*Matter of Case*, 214 N. Y. 199.)

The decree and order of the Surrogate's Court of Kings county should be affirmed, with costs.

JENKS, P. J., and THOMAS, J., concurred; MILLS, J., dissented upon the ground that the issue of undue influence should have been submitted to the jury, with whom PUTNAM, J., concurred.

Decree and order of the Surrogate's Court of Kings county affirmed, with costs.