In the Matter of the Estate of WILLIAM H. LINDSAY, Deceased.

Surrogate's Court, New York County, March 29, 1930.

*David L. Podell* [*Jacob L. Podell, Edward Copeland* and *Robert M. Davidson* of counsel], for the petitioner.

*McManus, Ernst & Ernst* [*Terence J. McManus, Walter E. Ernst* and *Nathanial Sokolski* of counsel], for the respondent.

FOLEY, S. This is an application by Virginia E. L. Copeland, the daughter of the testator, to reopen the probate proceeding and to set aside the decree admitting the will to probate, which was entered on the 10th day of December, 1924. Various grounds have been presented, among others: (1) Invalid service of the citation upon the petitioner, who, at the time of the original probate proceeding, was an infant about seventeen years of age; (2) fraud, alleged to have been practiced upon her and upon the court in the conduct of the probate proceeding; (3) newly-discovered evidence claimed as sufficient to invalidate the will by reason of the mental unsoundness of the testator and by the exercise of undue influence upon him by his widow. The application is denied upon all grounds.

Testimony was taken before me on the issue of the service of the citation, and it was conclusively established that the citation was duly and properly served upon the petitioner in accordance with the requirements of the Surrogate's Court Act.

The consideration of the remaining grounds for vacating the decree involves the sufficiency of the affidavits and oral proof as tested by the rules laid down by the pertinent authorities which have dealt with the granting or denial of the relief sought in such applications. (Matter of Leslie, 175 App. Div. 108; Matter of Jackson, 134 Misc. 750; affd., 227 App. Div. 777; Matter of Elias, 222 id. 728.) In the Leslie Case (supra) the tests applicable were stated as follows: " It is not open to any one, merely by asserting a nebulous claim to an estate, to ask that a solemn decree admitting a will to probate be vacated, and a long and expensive contest be entered upon. He must first show with some degree of probability that his claim is well founded and that, if afforded an opportunity, he will be able to substantiate it."

The petitioner here became of age on July 27, 1928. This proceeding was begun by her one year less a day thereafter. In the meanwhile she had accepted certain benefits given to her under the will. Laches and estoppel have been urged against her by the respondent, but in my opinion do not bar her application. By reason of her status as an infant during the pendency of the probate proceeding, I have, during the course of the proceeding, given most careful consideration to the claims made by her and have granted every opportunity for the submission of supplemental affidavits and of oral testimony in her behalf. That procedure was required because of the established policy of the Surrogate's Court to safeguard and protect the rights of infants.

After careful consideration of all the affidavits and testimony submitted, I find no evidence of fraud or imposition practiced upon

the petitioner or her guardian or upon the court. During the course of the probate proceeding a competent attorney acted as her special guardian. He had over twenty-five years' experience in his profession and was a former judicial officer in the community. Before the admission of the will to probate, he conducted a careful examination of the attorney — the draftsman of the will — who was a subscribing witness. No objections were filed by him to the probate of the will, and in the light of the proofs on this application, none should have been filed.

Under our practice, the reopening of a probate decree is never justified because of the sole fact that the applicant may have been an infant or an incompetent at the time of the entry of the decree. The legal grounds for a vacatur, set forth in section 20, subdivision 6, of the Surrogate's Court Act, must also be established, either fraud, newly-discovered evidence, clerical error or other sufficient cause. Under the provisions of that section the power to reopen a decree must be exercised only in a case where a court of general jurisdiction (the Supreme Court) exercises the same powers. There must also be shown to the satisfaction of the surrogate, as defined in *Matter of Elias* (222 App. Div. 728), " facts sufficient to afford a substantial basis for contesting the will and reasonable probability of success to justify the opening of a decree admitting a will to probate " (citing *Matter of Leslie, supra*). I have pointed out that in the present case there is no satisfactory evidence of fraud, imposition or misrepresentation by the widow, or any one representing her, in procuring the admission of the will to probate. Moreover, the alleged newly-discovered evidence is legally insufficient to authorize the opening of the decree. In view of this conclusion, the question as to whether the petitioner has met the second requirement of the decision in *Matter of Leslie*, that is, the probability of success if the proceeding be reopened, becomes relatively unimportant, but the consideration of the evidence, submitted by her, justifies discussion in this opinion because of the previous status of the petitioner as an infant.

It is claimed by the petitioner that her father, the testator, was of unsound mind at the time of the execution of the will, and that the instrument was procured by the undue influence of his widow, the stepmother of the petitioner. These contentions are not sustained by the proofs. Tested by the rules laid down by the leading cases in this State, the petitioner could not succeed in setting aside the will if a trial were had on either of these issues, with a record similar to that now before the surrogate.

The testator became seriously ill early in October, 1924, and was confined to his bed some days before the execution of the will. He

was taken to the hospital on November 4, 1924, and died there on November 14, 1924. He was between fifty and sixty years of age. He was a man of long business experience, thrifty in his financial affairs and successful in the accumulation of a moderate estate. The will was drawn by a reputable attorney of over thirty years' standing and experience. He was a specialist in wills and estate matters. While he had not represented the testator previously in his professional capacity, he had been a friend for some years. There is evidence that he was selected by the testator. But in any event, there is no clear inference that he was chosen by the wife to procure the making of a will favorable to her. This attorney was examined as a witness before the surrogate. His testimony was convincing that he received the instructions of the testator as to the disposition of his estate from him alone, without foreign suggestion or influence; that while the testator at the time was in a weakened condition physically, his mind was clear. The will was drawn and executed on the same day — October 7, 1924. In the will the testator remembered his father with a gift of the income of a trust fund of $10,000. He made bequests of $3,000 to each of his two sisters. A trust fund of $10,000 was likewise created for the benefit of his infant daughter (the petitioner here). Under its terms it becomes payable absolutely to the daughter when she attains thirty-five years of age. His net estate, as fixed in the transfer tax proceeding, was approximately $160,000. The residue was left to the widow. She had been married to the testator for about five years. It is claimed that the relatively small bequest to the daughter is evidence that the will was unjust and was procured by improper influence. The law does not compel a testator to be just, nor to recognize natural claims upon his bounty. It did not compel the testator here to make a more adequate provision for his daughter, tested by her desires or by what some more indulgent father would do. So long as the will is his own, and not another's, it must stand. (*Matter of Ruef*, 180 App. Div. 203; affd., 223 N. Y. 582.) There may have been reasons, however, some of which are indicated in the proofs, which actuated the father in making the particular disposition for her. In any event, if he was competent and was not unduly influenced, it was his privilege to make his own plan of distribution.

There were two subscribing witnesses in addition to the draftsman. Neither of them has been shown to have been under the control of the widow. Each of them had known the testator for some years and at least one of them was connected in business with him long before his marriage to his second wife. The draftsman and the two other subscribing witnesses in their sworn statements

sustain Mr. Lindsay's mental competency at the time of the execution of the will. The testimony of the draftsman is particularly credible because of the dispute which arose over his fee for services in the administration of the estate. The amount he claimed was contested by the widow and was the subject of determination in this court and a subsequent affirmance on appeal by her to the Appellate Division. After this litigation, there was little motive on his part to color his testimony in her behalf. Various other witnesses, including the father of the decedent, his sister and brother-in-law, made statements in their affidavits as to the continuation of vigorous mentality to a period extending beyond the date of the making of the will and almost up to the time of death.

The proofs submitted by the petitioner on the issue of testamentary capacity are unconvincing. General statements have been submitted by witnesses as to his physical and mental condition during the period of his last illness. Specific statements as to his condition on the day of execution, or about that time, are lacking. In the trial of a contested probate proceeding on the issue of soundness of mind, precision as to the facts, dates, and particularly the mental condition of the maker of the will about the time of its execution, becomes most important. Testimony bearing upon such condition before or after execution is competent and material, but is of importance only as it bears upon the strength or weakness of mind at the exact hour of the day of execution. In the present case the testator was suffering from cirrhosis of the liver. It is common knowledge that a person afflicted with a progressive organic disease, not directly affecting the brain, may have sufficient mental strength to meet the legal tests for will-making up to a relatively short time before death. The condition of unconsciousness, or coma, or irrationality, in the last few days, is not indicative of the absence of mental capacity a week or a month before. Moreover, the mental power may fluctuate from day to day during the period of illness. On the issue of undue influence this rule of reasonable accuracy and precision likewise applies, for the strength or weakness of mind of the testator at the time of the giving of his instructions to the draftsman and at the execution, and his susceptibility to the influence of another on those occasions, are important elements of that issue.

In this case an example of the numerous general and loose statements of mental condition is afforded by the affidavits of Vera McLaughlin, the private secretary to the testator. She visited him several times during the period of his last illness in connection with her secretarial duties " to keep him apprised " of his office matters. Her statements are extremely general. She swears

that during his last illness and shortly before the execution of the will "at times" his mind wandered and that he was part of the time, or the greater part of the time, in a semi-conscious state. No specific statements are made by her as to his condition on the day of the execution of the will, or upon specific days immediately preceding or following. Her testimony is to a great extent contradicted by Miss Folensbee, the nurse who shortly after the execution of the will attended the patient. Miss McLaughlin's version is also negatived by the testator's blood relations and by other persons who saw him after the execution of the will.

Typical also of the vagueness of the petitioner's case was certain oral evidence taken at her request. Applications were made by her for the taking of the depositions before the surrogate, personally, of two witnesses who, it is claimed, refused to make affidavits in behalf of the petitioner. The applications were granted. But the testimony of these witnesses, as actually given, was utterly different from that which it was claimed by the petitioner would be given by them.

Upon a review of all the proofs on the issue of soundness of mind of the testator, it is my opinion that a direction of a verdict in favor of the will would be inevitable. (*Matter of Heaton*, 224 N. Y. 22; *Matter of Kennedy*, 229 id. 567, affg. 190 App. Div. 896, affirming direction of verdict by surrogate; *Matter of Rogers*, 127 Misc. 428; affd., 220 App. Div. 834.)

Similarly, the petitioner has failed to show reasonable probability of success on the issue of undue influence. The will furnishes strong indication of the proponent's uncontrolled selection of the objects of his bounty, particularly of his father and two sisters. The inclusion of these close relatives as beneficiaries was inconsistent with the inference of the exercise of undue influence by the wife. There is no evidence whatsoever of coercion, duress or domination exercised by her over the very testamentary act itself, or in the procurement of the specific benefits provided for her in the will. Certain inferences upon which the petitioner relies either have been shown not to exist, or have been satisfactorily explained. (*Matter of Elias*, 222 App. Div. 728.)

Upon the record I hold that the petitioner has failed to show that undue influence in any way affected the execution of the will. (*Matter of Ruef*, 180 App. Div. 203; affd., 223 N. Y. 582; *Matter of Price*, 204 App. Div. 252; affd., 236 N. Y. 656; *Matter of Kindberg*, 207 id. 220; *Smith* v. *Keller*, 205 id. 39; *Brick* v. *Brick*, 66 id. 144.)

Submit order on notice denying the application.