In the Matter of the Estate of CAROLINE STERN, Deceased.

Surrogate's Court, New York County, June 23, 1930.

*Max L. Schallek*, for the proponents.

*Benjamin Weiss*, for the contestant.

*John A. Bell, Jr.*, special guardian.

FOLEY, S. In this contested probate proceeding the validity of the will and two codicils, dated respectively April 28, 1926, January 26, 1927, and December 11, 1928, is attacked. At the close of the proceeding the proponent moved for a direction of a verdict. The motion is granted. The verdict is directed on all questions in favor of the proponent and the will and two codicils are admitted to probate as the last will and testament of the testatrix. The length of the trial and the interests of the parties require a statement of the reasons of this disposition.

Caroline Stern died on June 15, 1929. She left surviving as her next of kin her four children, Abraham and S. Sidney Stern, Sara Lehman and Bertha Velleman. At the date of the will she was about sixty-two years of age. She left an estate of approximately $225,000. The objections filed by her son Sidney raised the usual issues of invalid execution, testamentary capacity and undue influence. The will and codicils disinherit him and his sister Bertha. By these instruments certain legacies in moderate amounts were provided for Mrs. Stern's aunt and her maid. Bequests are likewise made to six charitable institutions. The residue is placed in trust with income payable to the daughter Sara and the son Abraham, and to the survivor for life, with remainder to their issue. In the first codicil certain changes were made as to the time of distribution of the remainder, and by the second codicil the bequest to her maid was increased to $1,500. The will contains a gift of $1 each to the son Sidney and the daughter Bertha with the following explanation: " I make this bequest because of the fact that I have out of my personal estate and property given to each of them the sum of Fifty Five Hundred Dollars during my lifetime, and for other reasons which are best known to themselves." The instruments were executed under the supervision of an experienced attorney. The contestant acquiesced in the direction by the surrogate in favor of the proponent of those questions dealing with the formalities of the making of the will. On the issue of testamentary capacity the contestant offered evidence of alleged eccentricities, peculiarities, miserliness, illness and acts and conversations which impressed certain of the witnesses as irrational. Mrs. Stern had suffered for some years from diabetes, nephritis and hardening of the arteries. Contestant's chief reliance was on certain testimony which he claimed tended to prove that his mother suffered from insane delusions. It was contended that these delusions took the general form of unfounded beliefs on her part that she was being persecuted on account of her money, and that her son Sidney wanted, or was planning, to kill her in order to get her money. The contestant also submitted testimony of two alienists who testified in answer to a hypothetical question that in their opinion the testatrix was of unsound mind at the time of the execution of her three instruments. These experts claimed that the symptoms established that Mrs. Stern was suffering from a state of paranoia. In the great mass of testimony submitted by both sides, only one witness, a Mrs. Lee, testified to the alleged delusion that the contestant, Sidney, was planning to kill his mother. There was entirely insufficient evidence that this delusion, if it ever actually existed in the mind of decedent, was persistent, fixed, unfounded and

continuous. Nor was the testimony of this witness sufficient to overcome the inference in the case that instead of the presence of delusions, the true state of mind of the decedent was a strong prejudice and hostility to her son because of his treatment of his mother and the unfortunate differences which arose between them. The legal tests of the sufficiency of evidence of delusions in affecting the testamentary act have been recently stated in *Matter of Nicholas* (216 App. Div. 399; affd., without opinion, 244 N. Y. 531). In that case a father, eighty-two years old, disinherited his son. His belief was that the son was disloyal to him and was attempting to destroy his business. It was held that even if that belief was illogical or preposterous, where facts were shown to support the belief in any degree, there. was no basis for the claim of delusional insanity. Since the record disclosed such facts, a direction of verdict by the surrogate admitting the will to probate was sustained by the appellate courts. The opinion of the Appellate Division, Second Department, referring to the case of *Matter of White* (121 N. Y. 406), states: " It was there held that if it appears that there is any basis in fact for the hostile feeling on the part of the testator toward the person disinherited, the courts will not speculate nor allow the jury to speculate whether that feeling and its results are based upon those facts or upon an insane delusion in regard thereto. The court said: ' if there are facts, however insufficient they may in reality be, from which a prejudiced, or a narrow, or a bigoted mind might derive a particular idea, or belief, it cannot be said that the mind is diseased in that respect. The belief may be illogical, or preposterous, but it is not, therefore, evidence of insanity in the person.' "

Similarly here, the testimony overwhelmingly supports the inference that the declarations of the decedent did not constitute delusions, but represented the commonplace expressions of an elderly person suffering from illness, that her relatives were anxious to see her die to obtain her money, that some of her children did not care for her, or that her estrangement from her son would worry her to death.

Proponent's evidence, documentary and oral, establishes a picture of the decedent entirely contrary to that presented by the contestant. This evidence showed that Mrs. Stern was a clever, intelligent woman, extremely economical in her financial affairs. After the death of her husband in 1911 she carefully managed his estate in a trust capacity, up to the time of her death. She likewise handled her own property with skill and thrift. She went to the theatre, read books and discussed them afterwards intelligently. She went to Europe on two occasions. She traveled and shopped

alone. Her conversations impressed many witnesses as rational particularly her discussions of current topics and family business and financial events. She was unhappy because of the estrangement from her daughter Bertha, which took place several years before the making of the will. In 1923 a difference arose between herself and her son Sidney as to the distribution of part of her husband's estate and particularly a distribution by her to her children of a mortgage which he claimed had been given to her by her husband. She regarded this distribution as a gift to her children. There is some evidence of a claim by the contestant and the daughter Bertha that this mortgage was part of their father's estate. In any event, because of this dispute a decisive break in the family relations occurred in November or December of 1923. The evidence shows that this rupture was the principal cause for the change which was then made, for on December 19, 1923, she executed a codicil which disinherited Sidney and Bertha. In this codicil the testatrix gave the same reasons for the disinheritance which are embodied in the will offered here and which are quoted above. In the light of the hostile relations which thus existed, the will cannot be said to be unnatural. Moreover, the testamentary plan whereby the testatrix disinherited two of her children and favored the remaining two, was repeated in a will executed in February, 1925, which was prior to the will here offered for probate.

The most important evidence in the case bearing upon the testatrix's soundness of mind, however, is found in her own writings, in her letters and in numerous checks drawn by her, and in financial records kept by her. These reflect the keenness of her mind up to the date of her death. She kept accurate record of income from securities, and prepared statements for use in her income tax returns. Her letters were intelligent. Her check stubs were kept with a meticulous care, remarkable for a woman of her years. In the ordinary probate case the written declarations of a testator have far greater weight than the testimony of witnesses as to oral declarations. The inference of any delusions was entirely destroyed by this array of uncontradicted facts. The conclusion of the psychiatric experts that the testatrix was of unsound mind likewise becomes valueless. " Where the opinion of a medical witness is contradicted by the facts, the facts must prevail." (*Buchanan* v. *Belsey*, 65 App. Div. 58, 62; *Matter of Burnham*, 201 id. 621; affd., 234 N. Y. 475.) Against evidence of testamentary capacity, the contrary opinions of experts based on a hypothetical statement scarcely raise an issue. (*Pettit* v. *Pettit*, *No. 1*, 149 App. Div. 485, 491.) Upon the entire state of the record, therefore, I hold that there was a complete failure of proof by the contestant upon the question of

soundness of mind. " Insufficient evidence is, in the eye of the law, no evidence." (*Matter of Case*, 214 N. Y. 199.) Nor is there any evidence here that might reasonably satisfy the jury that Mrs. Stern lacked testamentary capacity. The duty of the surrogate to direct a verdict in such cases has been repeatedly stated in the authorities. Responsibility to direct rests upon him rather than to submit the issue, with the hazards of a disagreement or a verdict against the will, which must inevitably be set aside. (*Matter of Heaton*, 224 N. Y. 22; *Matter of Case*, 214 id. 199; *Matter of Burnham*, 234 id. 475; *Matter of Kennedy*, 229 id. 567; *Matter of Brand*, 227 id. 630, affg. 185 App. Div. 134; *Matter of Meade*, 200 id. 346; affd., 235 N. Y. 508; *Matter of Dunn*, 184 App. Div. 386; *Matter of Bourne*, 121 Misc. 12, 14.)

On the issue of undue influence there was no evidence whatsoever tending to show coercion, force or improper influence prior to or at the times of execution. (*Matter of Ruef*, 180 App. Div. 203; affd., 223 N. Y. 582; *Matter of Price*, 204 App. Div. 252; affd., 236 N. Y. 656; *Matter of Kindberg*, 207 id. 220; *Smith* v. *Keller*, 205 id. 39; *Matter of Rogers*, 127 Misc. 428; affd., 220 App. Div. 834.) One observation only need be made here. The will of 1925 gave the residue of the estate to the son Abraham and the daughter Sara in equal parts outright. The 1926 will, offered for probate here, reduced their interests to a life tenancy of the residuary trust with remainder to their issue. It is hardly conceivable if the opportunity for undue influence existed, or the mind of the testatrix was so weak as to be subject to duress, that the persons exercising it would plan to thus materially decrease the testamentary benefits given to them. This change, on the other hand, was more consistent with the strong and dominant resolution and determination of the testatrix as evidenced by her acts, writings and conversations.

Submit decree on notice admitting the will and codicils to probate.