In the Matter of the Estate of FRANK O. BURRIDGE, Deceased.

Surrogate's Court, New York County, May 14, 1931.

*Herbert C. Smyth, Jr.*, for the executor.

*Albert Mintzer [Isidor Lazarus* of counsel], for Anna B. Burridge and Harry C. Bassler.

FOLEY, S.  This is an application to reopen a decree of this court made December 16, 1930, which reinstated and confirmed a prior decree originally admitting the will to probate.  The application is denied.

Frank O. Burridge, the testator, died on September 25, 1930. He was survived by his widow, Anna Burridge, also known as Anna " Bassler."  The script was offered for probate in a formal petition by the executor.  The testator was a resident of New York.  The widow resided in Pennsylvania.  It is undisputed that they had been living separately for several years.  In the probate proceeding the widow executed a formal, written waiver of the issuance and service of citation upon her.  No objections to the probate were filed by her.  Apparently, therefore, the waiver was regarded by herself and the other parties as an acquiescence in the admission of the will.  On October 2, 1930, a formal decree of probate was made.  A few weeks later a petition was filed in this court by the widow for permission to withdraw her waiver, to reopen the probate proceeding and for leave to file objections to the will.  Thereupon the executor and the attorney for the widow entered into a written stipulation, dated November 1, 1930, by which the decree of probate was reopened.  The executor states that this stipulation was voluntarily made by him for the purpose of expediting the trial of the probate contest.  The proofs submitted by the executor on this application convincingly show that the widow was fully informed as to the nature and effect of the waiver. (*Matter of Jackson*, 134 Misc. 750; affd., 227 App. Div. 777.)

Pursuant to this stipulation a decree was made on November 11, 1930, reopening the prior decree of probate, and granting the

widow thirty days within which to file her objections. On November 16, 1930, the widow died. Objections had not been filed by her attorney in the intervening time between the entry and service of the order, and the date of her death.

On December 16, 1930, after the expiration of the thirty-day period, the executor, pursuant to his rights under the stipulation and under the decree of November 11, 1930, entered thereon, obtained a decree, *ex parte*, reinstating and confirming the original decree of probate.

The ancillary administrator of the widow now seeks to vacate these decrees for the purpose of contesting the will. In a situation like this, where a decree of probate is sought to be reopened, the surrogate is required by the rules laid down by the pertinent authorities, *First*, to inquire into the circumstances of the default; *second*, the applicant is required to show " facts sufficient to afford a substantial basis for contesting the will and that reasonable probability of success to justify the opening of a decree admitting a will to probate." (*Matter of Elias*, 222 App. Div. 728, 1st Dept., citing *Matter of Leslie*, 175 App. Div. 108, 112). These rules have likewise been applied by the courts in the following decisions: *Matter of Jackson* (134 Misc. 750; affd., 227 App. Div. 777); *Matter of Kalmowitz* (134 Misc. 508); *Matter of Lindsay* (136 Misc. 555); *Matter of Rowe* (134 id. 759); *Matter of Gori* (129 id. 541); *Matter of Beattie* (N. Y. L. J. June 23, 1926; affd., 218 App. Div. 766); *Matter of Randolph* (N. Y. L. J. March 13, 1921; affd., 198 App. Div. 1004). The practice in the Surrogate's Court is similar to that in other courts where a judgment is sought to be vacated. A meritorious defense must be shown.

The test is stated in the *Leslie Case* (*supra*) by Mr. Justice SCOTT, as follows: " It is not open to any one, merely by asserting a nebulous claim to an estate, to ask that a solemn decree admitting a will to probate be vacated, and a long and expensive contest be entered upon. He must first show with some degree of probability that his claim is well founded and that, if afforded an opportunity, he will be able to substantiate it."

The application of these rules to the circumstances here compel the denial of the relief sought. I hold that the terms of the stipulation and the decree thereon limited the authority to file objections to the widow personally. It terminated with her death. By paragraph 4th of the stipulation the granting of the application of the widow to reopen the decree was " hereby consented to but only to the following extent and in the following manner." In the subsequent provisions mention is only made of her by name, particularly with respect to her right to file objections within the thirty-

day period.   The form of objections to the probate of a will in this court is simple, and can be easily and quickly drafted.   Her attorney could have verified them because of the fact that the widow was residing outside of the county and State of New York at the time.   During the balance of the thirty-day period no formal steps were taken in this court by the attorney for the widow, or by any representative of her estate.

There is some evidence in the affidavits that the death of the widow was attempted to be concealed and a settlement attempted to be forced despite the fact of her death.   Those circumstances, however, are relevant only on the question of the good faith of the applicant.

I further hold that under the special circumstances of this estate the ancillary administrator of the widow is not entitled as of right to intervene and file objections.   *Van Alen* v. *Hewins* (5 Hun, 44), cited by the attorney for her estate, involved different facts and must be deemed to have been modified by the subsequent rule enunciated by the First Department in *Matter of Leslie* (*supra*) and *Matter of Elias* (*supra*) and the other decisions heretofore cited.   The change in the attitude of the appellate courts on these applications is in all probability explained by their similar change in policy towards flimsy contests of wills.   This progressive change may be noted in the difference between the decisions of some years ago (*Hagan* v. *Sone*, 174 N. Y. 317, 323) holding that the issues in such contests were for determination by the jury, as compared with more recent decisions which require a direction of verdict where the evidence against the will is insufficient. (*Matter of Heaton*, 224 N. Y. 22; *Matter of Ruef*, 180 App. Div. 203; affd., 223 N. Y. 582.)

As to the second essential requirement I find that the ancillary administrator of the deceased widow has not shown facts sufficient to afford a substantial basis for contesting the will, nor reasonable probability of success to justify the opening of the decree admitting it to probate.   The will was executed on April 14, 1930.   The testator was then engaged in active business as the president of the Sun Typewriter Company.   It has been shown that his mental keenness continued to the time of his final illness and within a few weeks before his death in September of 1930.   The will was drawn by Michael H. Cardozo, Jr., an attorney of long experience and professional standing.   It was drafted carefully and deliberately after consultation with the testator and pursuant to his instructions.   The will makes various bequests and names his cousin as his residuary legatee.   The testator and the residuary

legatee were on terms of friendly association for a long period of years. In prior wills the testator named the same residuary legatee and made the same general disposition of his estate with certain changes in the preliminary legacies. The wife was not mentioned in any of these instruments. All of them would have to be successfully set aside before the contestant here could participate by intestacy. The omission of the wife as a legatee was natural. Shortly after their marriage in 1901 they separated. In 1917 she reappeared and sought support from him. He provided an annual allowance for her in a separation agreement made on February 23, 1917. At the same time she executed a formal release of dower in all the real estate owned by him. In July of 1929 a modified separation agreement was made which increased her annual allowance and significantly extended such allowance during her life time if she should survive her husband. This increased provision was made a charge upon his estate. It has been conclusively shown by the proofs submitted by the executor that for a long period of years she was intimately associated with one Harry C. Bassler (the applicant and ancillary administrator here). She frequently described herself not as Mrs. Burridge, but as " Mrs. Bassler." She traveled extensively with him and the inference is clear from her own written declarations that he was her paramour. In her will, which was dated November, 1929, her signature reads "Anna B. Burridge, sometime known as Anna Bassler." That will gave all her property to "my good friend " Bassler.

In view of these circumstances and because of the separation allowance which had been made for her, there was every reason why her husband should have disinherited her. Bassler is the sole legatee under her will as admitted to probate in Pennsylvania and in it he is described as " my only real and true friend." He thereby became entitled to her individual property in that State. He seeks here, in the guise of her ancillary administrator, to nullify her husband's will which gave nothing to the truant wife. Bassler attempts to obtain for himself her intestate share of her husband, Mr. Burridge's property in New York. The proofs submitted by him in this application are entirely insufficient to establish unsoundness of mind, fraud or undue influence in the execution of the will. Most of the statements contained in the affidavits submitted by him relate to alleged happenings long before the making of the will.

If the proofs here were before the surrogate at the end of the trial of the probate contest, even with the aid of every favorable inference to be drawn in favor of the contestant, a direction of a verdict in favor of the proponent would be inevitable. (*Matter of Ruef*, 180 App. Div. 203; affd., 223 N. Y. 582; *Matter of Price*, 119 Misc.

19; affd., 204 App. Div. 252; affd., 236 N. Y. 656; *Smith* v. *Keller*, 205 id. 39; *Matter of Kindberg*, 207 id. 220; *Matter of Heaton*, 224 id. 22; *Matter of Nicholas*, 216 App. Div. 399; affd., 244 N. Y. 531; *Matter of Rogers*, 127 Misc. 428; affd., 220 App. Div. 834.)

In view of these circumstances the estate should not be subjected to the burdensome expense of a futile contest. Submit order on notice denying the application and all the relief prayed for therein, with costs.