In the Matter of the Estate of COURTLAND H. YOUNG, Deceased.

Surrogate's Court, New York County, May 9, 1936.

*Martin Van Blarcom* and *Charles H. Watson,* for the petitioner.

*Charles T. Lark* [*Deane C. Comstock* of counsel], for the executors and trustees of estate of Courtland H. Young deceased, and for the beneficiaries of B. O. Young and others.

FOLEY, S. This is an application (1) to open the proceeding admitting the will of the testator to probate; (2) to set aside an order of compromise; and (3) to vacate a decree settling the account of the executors and trustees of the estate. The facts upon which the application is based are, briefly, as follows:

The testator died on December 3, 1930. His will was admitted to probate by decree of this court, dated December 26, 1930. In the probate proceeding, Neil Campbell Young, an infant son of the testator, had not been served with citation. Doubt had been cast upon the paternity of the infant by the testator in his will. The testator had procured a decree of absolute divorce against

the mother of the infant a short time before his death. On May 12, 1931, Dorothy R. Young, the mother of the infant, was appointed general guardian of the person of the infant by an order of the Surrogate's Court of Kings county, and on November 24, 1931, filed a petition to have the decree admitting the will to probate vacated and set aside. On January 22, 1932, I signed an order, upon the consent of the parties, directing that the decree admitting the will to probate and granting letters testamentary and trusteeship to the executors and trustees be vacated and set aside only as to the infant, Neil Campbell Young, and that citation issue to him. On February 26, 1932, Dorothy R. Young, as general guardian of the infant, applied in this court for leave to compromise the proposed contest of the will of the testator for the sum of $5,000. The application was granted by my former colleague, Surrogate O'BRIEN, upon the consent of all the parties, and by order dated March 4, 1932, he approved the settlement and directed the payment of the amount thereof to Dorothy R. Young, " as general guardian of the infant," upon the execution and delivery of a release by the general guardian on behalf of the infant. Immediately thereafter the sum of $5,000 was paid to her on behalf of the infant. It is stated that all of the moneys thus paid to the mother have been expended by her and that there is now no balance remaining in her hands to the credit of the infant.

The only grounds urged for the *vacatur* of the order and decrees appear to be that at the time of the payment of the sum of $5,000 to the mother of the infant, and at the time of the execution of the release to the estate and to the executors and trustees, she was the general guardian of the *person* only of the infant and had never been nor was she ever thereafter appointed general guardian of the *property* of the infant, nor had she ever qualified as general guardian by the filing of a bond. The petitioner in this proceeding is Rosabelle Mulchay, an aunt of the infant and a sister of his mother. Under date of February 1, 1936, the petitioner was appointed general guardian of the *property* of the infant by an order of the Surrogate's Court of Kings county, although the infant resided with his mother, at 315 West Fifty-seventh street, in New York county. It is charged by the executors that the close relationship of the general guardian of the property of the infant to the general guardian of his person, and the further fact that the infant resides with his mother, lead to the inference that this application was instituted at the instigation of the mother of the infant and for the sole purpose of obtaining additional moneys from the estate.

The various facts presented in the papers submitted on the application require a division of the discussion into two phases:

(1) Whether the reopening of the prior order and prior decrees is justified, and (2) if the application to reopen be denied, whether the present guardian of the property of the infant may recover over again from the representatives of the estate the amount of the original settlement or any portion of it.

(1) The pertinent authorities require that in order to reopen a decree of probate, the petitioner must show reasonable probability of success. (*Matter of Leslie*, 175 App. Div. 108; *Matter of Elias*, 222 id. 728; *Matter of Jackson*, 134 Misc. 750; affd., 227 App. Div. 777; *Matter of Lindsay*, 136 Misc. 555; affd., 234 App. Div. 841; *Matter of Bray*, 146 Misc. 415.) There is not the slightest indication in the moving papers here of a result favorable to the infant as a potential contestant. It is not contended that the testator lacked testamentary capacity, or was a victim of undue influence, or that the will was not validly executed.

The question next presents itself as to whether the compromise of the infant's claims, authorized by the order of Surrogate O'BRIEN, was not, under the circumstances, fair and adequate, and one made under statutory authority and pursuant to the ordinary procedure in the Surrogate's Court. No fraud in the making of the order of compromise has been charged. Clearly, the compromise was made under the provisions of section 19 of the Decedent Estate Law. The Surrogate's Court of New York county has exclusive jurisdiction over the approval of the compromise since the will had been offered for probate here. The contention of the general guardian of the property in the pending application, that this court was without jurisdiction to authorize any compromise, is, therefore, untenable, and must be overruled. In the petition in the compromise application before Surrogate O'BRIEN, the mother of the infant, as general guardian, alleged that she had been advised by her counsel " that the evidence upon which your petitioner desires to contest the probate of the will is highly doubtful, and may not be of sufficient weight and force to warrant the rejection of the said will as far as the infant, Neil Campbell Young, is concerned," and " that the amount offered is fair and should be accepted." The attorney for the general guardian in his affidavit which was presented to Surrogate O'BRIEN made substantially the same statements and strongly indicated the lack of probability of success upon the trial of a contest of the will.

The further contention of the applicant here, that the mother of the infant, as general guardian of the person, was not authorized by law to negotiate and compromise the claims of the infant is likewise without foundation under the provisions of the Surrogate's Court Act or the customary procedure in this court. A general

guardian is not required to give a bond or to obtain full and complete letters in a proceeding in order to act for the protection of the rights of his or her ward. A bond is not required to be given until the amount of money or property, which the infant is about to receive, is definitely known. If the procedure were otherwise, a needless waste of money would occur in the expenditure for the premiums on a surety company bond. In a contested proceeding in this court, the infant may be represented by a guardian of the person or a guardian of the property. A guardian of the property sometimes gives a bond and at other times acts without a bond under limited letters of guardianship. While the practice of a guardian of a person, as in the present case, appearing for an infant is not encouraged, there appears to be no statutory prohibition against it. Indeed, the term " guardian," as used in the Surrogate's Court, refers to a guardian appointed by the Surrogate's Court or the Supreme Court, of an infant's person or property, or both. (Surr. Ct. Act, §§ 172, 314.) There is specific authority also for a guardian of a person to receive the property or funds of an infant upon the giving of a bond pursuant to the provisions of section 182 of the Surrogate's Court Act. The status of the mother of the infant, in her authority to represent the infant in the negotiations of settlement, was no different here than that of a special guardian in this court or a guardian *ad litem* in the Supreme Court. Ample authority of the right of a general guardian, who has not given a bond, to act for the protection of the infant's rights may be found not only in the provisions of the Surrogate's Court Act but in the decision of the Court of Appeals in *Wuesthoff* v. *Germania Life Insurance Co.* (107 N. Y. 580, at p. 592). I accordingly hold that the application to vacate the order and decrees must be denied.

(2) On the second phase of the case, it conclusively appears from the decisions in this State that the payment by the executors of the amount of the settlement was unlawful. (*Honadle* v. *Stafford,* 265 N. Y. 354; *Thayer* v. *Erie Co. Savings Bank,* 217 id. 501; *Greenburg* v. *N. Y. C. & H. R. R. R. Co.,* 210 id. 505; *Joyce* v. *Washington Storage Warehouse & Van Co.,* 176 App. Div. 538; *Heiter* v. *Joline,* 135 id. 13.) They should have required the mother of the infant, before the payment of the sum of $5,000, to have been appointed general guardian of the property, after furnishing a bond in the full amount of the settlement. In the alternative, they should have required the mother, as general guardian of the person, to have given the bond required by section 182 of the Surrogate's Court Act, in a similar amount. While there is apparent hardship where one of two innocent persons must suffer for the act or default of a third person, the courts are without power to mitigate or prevent

it. " The nearest approach to justice in such cases is to lay the burden upon the party through whose agency or initiative the wrong was made possible." (*Greenburg* v. *N. Y. C. & H. R. R. R. Co.*, 210 N. Y. 505.) Judge WERNER, in the latter case, pointed out the reason for the legislation designed to protect infants: " Infants are the wards of the courts, and our rules of practice abound in provisions of ancient origin designed to safeguard their legal rights." In that case, and in numerous other cases in this State, it has been held that the defendant in an action or the representative of an estate who pays the amount of a judgment or the settlement of an infant's claim or a legacy or distributive share to a guardian who has furnished no security, does so at his peril. Where the infant's funds are diverted by the guardian, or his attorney, a second payment may be enforced in favor of the infant. These rules apply with equal force to proceedings in the Surrogate's Court as they do to infants' actions in other courts.

In *Lowman* v. *Elmira, C. & N. R. R. Co.* (85 Hun, 188; affd. on opinion below, 154 N. Y. 765), cited by Judge WERNER in *Greenburg* v. *N. Y. C. & H. R. R. R. Co* (*supra*), the attorney for a plaintiff administrator satisfied the amount of a judgment for damages for causing the death of a decedent and the proceeds were paid over by the attorney to the administrator whose letters of administration, it appeared, were limited and did not entitle him to receive payment. The satisfaction piece was later set aside upon the application of another administrator subsequently appointed, and the defendant in the action was required to pay again.

I accordingly hold that the executors are primarily liable, in their individual capacities, for the amount of the original settlement, because of their carelessness and negligence in failing to compel the mother of the infant to file a bond before receiving the funds. The allegations of the petition are sufficiently set forth to justify the granting of this alternative relief for the benefit of the infant and the enforcement of the proper provision as against the executors under the compromise order of Surrogate O'BRIEN. However, the executors may be able to establish that part or all of the original funds were applied by the mother for the maintenance, support or education of the infant. To the extent of the amount of such expenditures, the executors are entitled to an equitable counterclaim. (*Wuesthoff* v. *Germania Life Insurance Co.*, 107 N. Y. 580, at p. 592.) That issue will be heard by me on the 28th day of May, 1936, at three P. M. The submission of the order to be entered herein must necessarily await the completion of the proof upon the hearing.