### In the Matter of the Estate of LEO STEIN, Deceased.

Surrogate's Court, New York County, June 5, 1940.

*Harvey K. Mackler*, for the petitioner.

*Sheafe & McEwan* [*Kenneth McEwan* of counsel], for the objectant.

FOLEY, S. The paper offered for probate in this proceeding was contested by the widow and daughter of the testator. It is dated November 15, 1939. The testator died on March 5, 1940. The contributing cause of his death was general arterial sclerosis, a condition which is not extraordinary in persons of advanced years and one which certainly, upon the evidence in the present proceeding, in no way affected the strength of mind and memory of the testator.

The will is simple in its terms. In it he made a specific bequest of certain articles of personal property of relatively small value to a friend. He bequeathed one-third of his estate to his wife and left the residue to his physician who had attended him over a period of years. He disinherited his daughter. The bitterness of the contest is out of all proportion to the size of the estate. The known assets do not exceed the sum of $1,200. The contestants assert that the estate may be increased by the further sum of $10,000 because of the possibility, if they were successful, they would be able to set aside certain changes made by the decedent in the designation of beneficiaries in insurance policies aggregating approximately that amount. Upon the evidence presented on the trial, that possibility is extremely remote and most likely non-existent.

At the time of the execution of the will the testator was seventy-six years of age. He had been a successful life insurance agent of long experience. The testimony conclusively shows that he retained keenness of mind to within a few days of his death. He had been employed by the New York Life Insurance Company and because of his success he became a member of the special group of agents connected with that institution known as " Nylic." Membership in it was based upon success in placing increased amounts of insurance over a period of years.

The usual grounds of contest were asserted: (1) Invalidity of execution of the will; (2) lack of testamentary capacity; (3) undue influence, and (4) fraud. The trial was had by the surrogate with a jury. At its close, the motion of the proponent for a direction in his favor upon all these issues was granted and the will was admitted to probate.

Upon the issue of the due execution of the will, the evidence was clear, convincing and uncontradicted. The execution of the will was supervised by an attorney and witnessed by his secretary and a law associate. The obligation to direct a verdict on the issue of factum of the will, therefore, existed. (*Matter of Ewan*, 206 App. Div. 198.)

Upon the issue of testamentary capacity the most convincing proof of the soundness of mind of the testator was supplied by the witnesses called by the contestants. Nine physicians, of whom two were specialists in nervous and mental diseases, testified to the mental competency of the testator over a period of years to the day before his death. It is difficult to understand the strategy employed by the contestants in thus establishing beyond peradventure the mental capacity of the testator. Perhaps they were called on the theory they were hostile witnesses, but the array of their testimony

fully proved the claims of the proponent upon the issue of testamentary capacity and the strength of mind of the testator and his resistance to restraint upon the issue of undue influence. In addition to these physicians, two registered nurses who attended the testator for several weeks during his last illness likewise testified to the retention of his mental faculties during this period and several lay witnesses contributed their opinions as to their impressions of the rationality of the testator's oral declarations, acts and conduct, which they described. Not a single witness produced by the contestants testified to any impression of an irrational word uttered or act done by the testator.

The duty of directing a verdict that Mr. Stein was of sound mind at the time of making this will thus became imperative. (*Matter of Heaton,* 224 N. Y. 22; *Matter of Burke,* 250 App. Div. 855; affd., 276 N. Y. 497; *Matter of Stern,* 137 Misc. 668; affd., 235 App. Div. 60; affd., 261 N. Y. 617; *Matter of Price,* 204 App. Div. 252; affd., 236 N. Y. 656; *Matter of Hermanowski,* 279 id. 727, affg. 254 App. Div. 748.)

No evidence whatsoever on the issue of fraud in the procurement of the will was offered by the contestants.

There remains for disposition the issue of undue influence. Upon this question the burden was upon the contestants. Upon it they utterly failed to adduce any evidence showing either ordinary influence or undue influence or coercion exercised upon the testator by Dr. McGuinness, the residuary legatee, or by the other persons charged by the contestants with inducing the making of the will. The disinheritance of the daughter was not only explained, but justified by the documentary and oral evidence. Unfortunate family differences arose in the last years of his life between the testator, his wife and daughter, his only child. These differences grew into a feud which found expression in bitter litigation between the parties. Six actions involving the conflicting claims of husband and wife were initiated in the Supreme Court. The wife had obtained possession of seven insurance policies upon the life of Mr. Stein. He sued in replevin to recover them or their value and, after a long trial, was awarded a verdict in his favor. The judgment entered upon it was affirmed by the Appellate Division (*Stein* v. *Stein,* 257 App. Div. 941), and leave to appeal to the Court of Appeals was denied by that court (281 N. Y. 889).

The remaining actions never came to trial. They involved a suit by the wife for a separation from the husband; an action by him against her for an accounting of some $60,000; an action by her for the sum of $20,000 for money loaned; an action by a storage warehouse company against both the decedent and his wife to deter-

mine their conflicting claims to rugs and furnishings of the home, and an action by the wife against the husband and another storage warehouse company for the other household furnishings. All this litigation covered a period of approximately two years before the execution of the will.

Both the wife and daughter sought unsuccessfully to have the testator adjudged incompetent. With that objective, he was arrested and taken to the Psychiatric Division of Bellevue Hospital. The psychiatrist employed by him certified to his sanity, and even the psychiatrist employed by the wife and daughter refused to certify to his incompetency. The attempt to have him committed thus failed.

Upon the complaint of his daughter he was twice brought into the Magistrates' Court to answer her charge of assault in inflicting blows upon her. In each case he was found innocent and the charges were dismissed.

With this background of evidence preceding the execution of the will, it is remarkable that he gave his wife her intestate share of his estate. In all probability it was done to comply with the provisions of section 18 of the Decedent Estate Law. Justifiable reason for the disinheritance of his daughter plainly existed. The choice of his attending physician of many years was not an illogical one under the circumstances. There is evidence of his declarations of appreciation of the professional services rendered to him and his gratitude for such services, which he stated had prolonged his life.

The record is barren of the slightest indication of any attempt by the physician to influence the testator in the making of his will, or even of a suggestion that the will be made or any bequest should have been given in favor of the physician. The latter was not present at the time of the execution of the will. All of the instructions were given to the attorney, who drafted it, by the testator himself. It was prepared and executed at the office of the attorney at a time when the testator was in relatively good health. At about that time he made changes in the beneficiaries of his life insurance policies. Part of these benefits were given to the same physician, but again the changes were made by the testator voluntarily, of his own initiative and free from any influence whatsoever. The testimony of the officials and employees of the insurance company in which the policies were written was particularly convincing upon this phase of the case.

The contentions of the contestants are based upon mere suspicions without a scintilla of evidence to support them. The confidential relation of physician and patient gave rise to a duty of

explanation. That duty has been fully met by the proponent. (*Matter of Putnam*, 257 N. Y. 140.) The observations of the Appellate Division, Second Department, in *Matter of Ruef* (180 App. Div. 203; affd., 223 N. Y. 582), which is one of the leading cases on undue influence in this State, apply with striking vividness to the facts here. The testator there was eighty-two years of age, addicted to the excessive and continuous use of alcohol, blind and dependent on his daughter for many personal offices. The will seemed unjust. It was there stated " an inference of undue influence cannot be reasonably drawn from circumstances when they are not inconsistent with a contrary inference. * * * ' It must have been shown that such coercion, duress or domination was exercised over the very testamentary act itself.' " The facts in that case plainly gave rise to suspicion of undue influence, but such evidence was not in the case. " The testator's property was his own. Under our system of law, he had the power to do with it as he chose, * * *. The law does not constrain a testator to be just, or to recognize natural claims upon his bounty. So long as the will is his own and not another's, it must stand. * * * The conclusion which we reach is that proof of age, blindness, drunkenness, change of testamentary intent, inconsistency between the will and previously expressed intention, injustice in the disposition of the estate, dependence created by blindness on the chief beneficiary, and the influence of her constant presence, does not, without evidence of direct pressure, especially when the will was drafted by a lawyer freely chosen by the testator, constitute evidence which will support a verdict that the will was the product of undue influence. If the evidence is not sufficient to support a verdict, it is ' in the eye of the law, no evidence,' and should not be submitted to a jury. (*Matter of Case*, 214 N. Y. 199.) " The decree based upon the direction of a verdict in favor of the proponent and the admission of the will to probate was thus sustained.

In the recent case of *Matter of Burke* (276 N. Y. 497, affg. 250 App. Div. 855) the Court of Appeals again sustained the duty of a surrogate to direct a verdict where the evidence was insufficient.

A similar direction on the question of undue influence was required in the present proceeding.

Tax costs and submit decree admitting the will to probate.